[Civ. No. 18257.   First Dist., Div. Two.   May 13, 1959.]

CHESTER FRAZEE, Appellant, v. CIVIL SERVICE BOARD OF THE CITY OF OAKLAND et al., Respondents.

Robert H. Kroninger for Appellant.

John W. Collier, City Attorney, and Mark B. Shragge, Deputy City Attorney, for Respondents.

O'DONNELL, J. pro tem.*—This is an appeal by petitioner from a judgment denying a peremptory writ of mandate to compel his reinstatement as a police officer of the city of

---

*Assigned by Chairman of Judicial Council.

Oakland. ■ The appeal is taken on the judgment roll only. Error, if any, therefore must affirmatively appear from the face of the judgment roll before a reversal can be ordered. (*Utz* v. *Aureguy*, 109 Cal.App.2d 803 [241 P.2d 639].)

Appellant had, at the time of the incident out of which this proceeding arose, been a police officer of the city of Oakland with full and permanent civil service status for a period of approximately 10 years. On November 1, 1956, appellant was accused by a citizen of attempting to commit a felony. In connection with the investigation of the charge respondent chief of police ordered appellant to submit to a polygraph, or "lie detector," test. Appellant refused to comply with the order. He was thereupon discharged from the police force. Appellant had previously violated several other rules of the police department. Although it was the cumulation of all these violations that resulted in his discharge, we are here concerned only with the question of whether the last violation, that is, his refusal to submit to the test, constituted a valid ground for dismissal.

Appellant appealed to respondent civil service board. That body, after a hearing, affirmed the order of discharge. The present mandamus proceeding ensued. The trial court, in findings that followed substantially those of the board, found that the order of the chief of police directing appellant to submit to a polygraph examination was not an unreasonable order, and that appellant was, in violation of the provisions of the City Charter of the City of Oakland, guilty of misconduct, conduct unbecoming an officer, and insubordination in refusing to comply with the chief's order. Judgment was thereupon entered that the writ of mandate be discharged.

It is appellant's contention that the order of the chief of police that he, appellant, submit to a polygraph test was arbitrary and unreasonable and that therefore his resulting discharge from the police department was unwarranted. He bases this contention on the following two grounds: (1) that since the results of polygraph tests are inadmissible in evidence, to submit to one would be an idle act, and that therefore the chief acted arbitrarily and unreasonably in requiring appellant to take such a test; (2) that it is improper for a chief of police to compel a police officer to participate in the investigation of a charge in which the officer is himself implicated.

■ Appellant's assertion that the results of polygraph tests are not admissible in evidence in the courts of this state

is correct. "Lie detector tests do not as yet have enough reliability to justify the admission of expert testimony based on their results." (*People* v. *Carter*, 48 Cal.2d 737, 752 [316 P.2d 665].) However, it does not follow that such tests are completely without value. It is well recognized that polygraph tests are commonly used by law enforcement agencies in the investigation and detection of crime, and that they have some value in such investigation. (*McCain* v. *Sheridan*, 160 Cal. App.2d 174, 177 [324 P.2d 923].) Such tests can serve "to guide police investigators in their hypotheses." (3 Wigmore on Evidence (3d ed.) § 999, p. 646.) ▆▆ This being so, it cannot fairly be said that a criminal investigator acts unreasonably or capriciously when he seeks to make use of a polygraph test in pursuing the investigation of a crime. In considering the factual situation presented in the case at bar we must bear in mind the all-important concept of the peculiar and delicate position police officers hold in society. In treating of that concept Mr. Justice Spence, speaking for this court in *Christal* v. *Police Commission*, 33 Cal.App.2d 564, 567-568 [92 P.2d 416], said:

". . . Such officers are the guardians of the peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. Among the duties of police officers are those of preventing the commission of crime, of assisting in its detection, and of disclosing all information known to them which may lead to the apprehension and punishment of those who have transgressed our laws. When police officers acquire knowledge of facts which will tend to incriminate any person, it is their duty to disclose such facts to their superiors and to testify freely concerning such facts when called upon to do so before any duly constituted court or grand jury. It is for the performance of these duties that police officers are commissioned and paid by the community, and it is a violation of said duties for any police officer to refuse to disclose pertinent facts within his knowledge even though such disclosure may show, or tend to show, that he himself has engaged in criminal activities."[*]

▆▆ Circumstances can, of course, be conceived of wherein

[*]It should be noted that petitioner does not place his refusal to submit to the test on the ground that it might have resulted in his making self-incriminating statements. With respect to a public employee's invocation of the privilege against self-incrimination as constituting

a superior's order that a subordinate officer submit to a polygraph test would be unreasonable, or wherein the subordinate might have some legitimate reason for refusing to submit to the test. However, there is nothing that appears on the face of the record in the case before us that suggests that the chief acted arbitrarily, capriciously or unreasonably in requiring the test, nor that suggests any valid excuse for petitioner, as a sworn officer of the law, to refuse to submit to the test.

Appellant cites the case of *Garvin* v. *Chambers*, 195 Cal. 212 [232 P. 696]. That case is readily distinguishable from the case at bar. In that case Garvin, a police officer, was charged with the commission of a crime. He was thereupon suspended from his position as a police officer. During the period of his suspension his superior officer demanded that he, Garvin, give an oral statement relative to the charge against him. Garvin refused to do so unless his attorney was present. Garvin was discharged for disobedience of the order. The order of discharge was held invalid on the ground that ''while the order of indefinite suspension was in force Garvin's status as a policeman was suspended to the extent that he could not be called upon to do police duty nor be held amenable for a failure to do such duty.'' (P. 224.) And on page 225: ''It was but natural that Garvin should deal at arm's-length with the chief, who, during the period of suspension, was acting not as Garvin's superior officer but as his prosecutor.'' In the case at bar appellant was never under suspension.

Based on the scant record before us we conclude that it does not affirmatively appear therefrom that the chief of police acted arbitrarily, capriciously or unreasonably in ordering appellant to submit to a polygraph test, nor does it affirmatively appear therefrom that appellant had any valid excuse or justification for refusing to take the test. His refusal therefore constituted a proper basis for his discharge from the police force.

The judgment is affirmed.

Dooling, Acting P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 8, 1959. Gibson, C. J., and Schauer, J., were of the opinion that the petition should be granted.

grounds for his discharge see the Christal case and *Slochower* v. *Board of Higher Education*, 350 U.S. 551 [76 S.Ct. 637, 100 L.Ed. 692]; *Board of Education* v. *Mass*, 47 Cal.2d 494 [304 P.2d 1015]; and Anno., 44 A.L.R.2d 789.