*909
 
 Opinion
 

 REYNOSO, J.
 

 Plaintiff Stephen W. Kelly appeals from a judgment of the Sacramento County Superior Court denying his petition for a peremptory writ of mandate ordering his reinstatement to the position of criminalist I with the California Department of Justice. Plaintiff contends that the imposition of discipline against him violated his right to freedom of association and his right to privacy, that the hearing officer of the State Personnel Board admitted irrelevant and prejudicial evidence against him, that the decision was not supported by the findings, that the findings were not supported by the evidence, and that the penalty was excessive. We affirm the judgment.
 

 I
 

 Agents with the Department of Justice conducted an interview with an informant who purported to be acquainted with plaintiff. She stated that plaintiff was employed by the State of California in a laboratory, and that in the past he had supplied her with drugs, some allegedly coming from evidence and some from an unknown source. An investigation was initiated. An interview was conducted with plaintiff. At that time plaintiff was informed that he was being questioned as part of an official internal investigation and that questions would be asked concerning his official duties. He was further advised that refusal to answer or evasion and deception could be cause for disciplinary proceedings and that none of the information or evidence gained from his answers could be used against him in a criminal proceeding.
 

 Plaintiff was advised of the charges made by the informant. It was then explained to him that in order to make the investigation it would be necessary to contact some of his acquaintances, and he was requested to provide a list of some friends that might shed light on the charges. Plaintiff initially agreed to submit a list of five friends. However, he later changed his mind and refused to comply with the request. A written notice was sent, but plaintiff again refused to provide the names.
 

 A month after the initial interview plaintiff was informed that punitive action (dismissal) would be taken against him unless he complied with the request to supply names of five or more acquaintances that might have knowledge of facts concerning the investigation. Plaintiff still refused. Consequently, on January 18, 1977, a written notice of punitive action was served upon him. The notice informed him that his refusal to
 
 *910
 
 supply the names constituted insubordination and willful disobedience; he was dismissed from his position at the close of business on January 24, 1977.
 

 On March 24, 1977, an amended notice of punitive action was served. The amended notice added charges of inexcusable neglect of duty, dishonesty, and other failure of good behavior of such a nature that it causes discredit to his agency and his employment. The additional charges arose out of an incident in which plaintiff was alleged to have taken parcels of hashish scheduled for destruction from an inventory; he allegedly stated at that time that he intended to use the hashish for a laboratory standard. Plaintiff was alleged to have failed to log the hashish into the laboratory log book; a search of the laboratory failed to reveal the hashish. It was further alleged that plaintiff had been unable or unwilling to provide any information on the whereabouts of the hashish.
 

 At plaintiff’s administrative hearing he admitted that he had, in the course of his employment, participated in an inventory of drugs scheduled for destruction. He admitted removing a small portion of hashish from the inventory, but contended that he intended to use the hashish for a laboratory comparison. Plaintiff stated that the amount he took was about one gram and that he subsequently processed it into hash oil in the laboratory for use as a standard. He stated that the hash oil would still be found in the refrigerator at the laboratory.
 

 Plaintiff’s fellow criminalist in the laboratory testified that standards are unavailable for marijuana and hashish, and that criminalists must obtain such standards elsewhere. He further testified that after the charges were brought against plaintiff he had found hash oil in the laboratory refrigerator reduced to liquid form. Plaintiff’s supervisor, however, testified that he had checked the laboratory log books and was unable to find the hashish logged in, and that plaintiff’s fellow criminalist had told him that the hash oil found in the refrigerator had been there for a long period of time.
 

 The hearing officer found that plaintiff was not justified in refusing to supply the requested information concerning his acquaintances. He further found that plaintiff violated the court order directing destruction of the drugs by removing them from the inventory, and that he had violated other laws and regulations in failing to properly register the hashish in the laboratory log book. The hearing officer’s proposed decision upheld the dismissal without modification. The State Personnel
 
 *911
 
 Board adopted the proposed decision as its decision in the matter. On petition for a writ of mandate the trial court upheld the action of the board and plaintiff appeals.
 

 II
 

 Plaintiff contends that the imposition of discipline for his refusal to supply a list of some of his acquaintances violated his right of freedom of association and his right of privacy. Initially, we note that we are not concerned with plaintiff’s right against self-incrimination. (1) It is settled that a public employee may be required to answer questions relative to his fitness for his employment if his answers cannot be used against him in a subsequent criminal proceeding. (See
 
 Lefkowitz
 
 v.
 
 Turley
 
 (1973) 414 U.S. 70, 77 [38 L.Ed.2d 274, 283, 94 S.Ct. 316].) If the employee still refuses to answer questions relevant to his official duties then he may be dismissed.
 
 (Szmaciarz
 
 v.
 
 State Personnel Bd.
 
 (1978) 79 Cal.App.3d 904, 918 [145 Cal.Rptr. 396].)
 

 In fact, plaintiff was properly informed that any information he gave during the course of the investigation would not be used against him in a criminal proceeding and that his refusal to provide the information would result in disciplinary action. Nor was plaintiff’s dismissal based upon adverse inferences from his refusal to supply the information; rather, it was based upon insubordination and willful disobedience in refusing to cooperate in the investigation. The dismissal did not violate plaintiff’s right against self-incrimination; however, we must consider whether the request for information impermissibly infringed upon plaintiff’s rights of association and privacy.
 

 Plaintiff’s statement that the rights he asserts are absolute is erroneous. They are not. (See
 
 Konigsberg
 
 v.
 
 State Bar
 
 (1961) 366 U.S. 36, 49-50 [6 L.Ed.2d 105, 116 [81 S.Ct. 997]].) By engaging in public employment as a criminalist plaintiff did not give up his constitutional rights, “[h]e did, however, undertake obligations of frankness, candor, and cooperation in answering inquiries made of him by his employing Board examining into his fitness to serve it. . . .”
 
 (Beilan
 
 v.
 
 Board of Education
 
 (1958) 357 U.S. 399, 405 [2 L.Ed.2d 1414, 1419, 78 S.Ct. 1317].) Although the rights plaintiff asserts are not absolute they nevertheless occupy a preferred position and even a legitimate and substantial government purpose may not be allowed to broadly stifle these fundamental personal liberties when the end can be more narrowly achieved.
 
 *912
 

 (Shelton
 
 v.
 
 Tucker
 
 (1960) 364 U.S. 479, 488 [5 L.Ed.2d 231, 237, 81 S.Ct. 247].)
 

 It cannot be denied that the Department of Justice had a substantial and legitimate purpose in inquiring into plaintiff’s activities. The informant had been arrested on narcotics charges and had told agents of the department that plaintiff had supplied her with drugs and that some of the drugs had been taken from the laboratory. In the position of criminalist plaintiff was responsible for the analysis of physical evidence, including narcotics, and for testifying in court as to his results. If plaintiff were found to be involved in narcotic trafficking it would invalidate the results of his laboratory analysis in all of his cases and would cast doubt upon the work of the other criminalists in the laboratory. In addition, it would be self-defeating for the department to employ a person who was redistributing seized contraband. In view of the sensitive nature of plaintiff’s position as a criminalist the department had the duty to investigate the serious charges made by the informant.
 

 Plaintiff cites
 
 N.A.A.C.P.
 
 v.
 
 Alabama
 
 (1958) 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163] in support of his contention that he could not be requested to provide the names of some of his acquaintances. The Supreme Court was “unable to perceive that the disclosure of the names of plaintiff’s rank-and-file members has a substantial bearing on either [of the state’s alleged purposes].” (357 U.S. at p. 464 [2 L.Ed.2d at p. 1501].) It was the broad, indiscriminate requirement that the identity of all of the rank-and-file members be disclosed where such disclosure would subject the members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility, that the court found to be invalid.
 
 (Ibid.)
 
 We deal with a narrowly drawn order tied to a proper governmental purpose. That is, we deal with the type of order which the
 
 N.A.A.C.P.
 
 v.
 
 Alabama
 
 court would approve.
 

 The information requested from plaintiff bore a substantial relationship to the investigation. The department requested plaintiff to supply it with the names of persons who had visited him or been with him at parties where he was alleged to have provided drugs to other persons. The department did not request a list of all plaintiff’s friends and acquaintances, nor did it request a list of his associations unrelated to the specific investigation underway. Plaintiff’s reliance on
 
 N.A.A.C.P.
 
 v.
 
 Alabama, supra,
 
 is thus misplaced.
 

 
 *913
 
 It is beyond dispute, as it should be, that a government employer cannot require an employee to disclose all organizational ties or friendships where such relationships have no bearing upon occupational competence or fitness.
 
 {Shelton
 
 v.
 
 Tucker, supra,
 
 364 U.S. at pp. 487-488 [5 L.Ed.2d at p. 237].) That is not to say that a state agency employer is disabled from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for public service.
 

 The investigation into the allegations of plaintiff’s involvement in drug trafficking served an important interest of his employer and the information requested was narrowly limited to that investigation and reasonably calculated to further the investigation. Plaintiff had no constitutional right to refuse to cooperate with the investigation or to refuse to provide the requested information and his refusal to do so supports the imposition of discipline.
 
 [1]
 

 III
 

 Plaintiff contends that the hearing officer admitted irrelevant material that was prejudicial to his cause. The evidence of which the plaintiff objects was testimony from plaintiff concerning his refusal to provide the information requested of him, and the testimony concerning the charges made by the informant. The evidence, plaintiff tells us, was irrelevant since he admitted that he refused to supply the information to the agents of the department. We disagree.
 

 Plaintiff admitted that he refused to supply the information requested of him. He did not, however, admit that his refusal was cause for discipline and contended strenuously that the request for disclosure violated his constitutional rights. We have noted that the rights plaintiff asserts are not absolute. We have also noted that the right of the department to request information from plaintiff is not absolute. The determination as to whether the information requested from plaintiff could be compelled on pain of discipline requires a consideration of the
 
 *914
 
 purpose of the department and the relationship of the information requested to the purpose of the investigation. It was thus essential that the hearing officer understand the background of the investigation and the nature of the information requested. A consideration of plaintiff’s constitutional contentions could not proceed without such information on the record. The evidence admitted was thus evidence having a tendency to prove or disprove disputed facts that were of consequence to the determination of the action, and was thus relevant. (Evid. Code, § 210.)
 

 Additionally, it was necessary that the department show that plaintiff was informed of the possibility that refusal to provide the information could result in discipline taken against him, and that he was informed that his answers would not be used in a criminal proceeding. (See discussion II,
 
 ante.)
 
 The questions asked of plaintiff concerning his refusal were calculated to establish these facts and were thus relevant.
 

 The evidence of the charges made by the informant was not admitted to prove that he was involved in drug trafficking. There was no charge that he had been so involved, and the board did not find that he had been involved in drug trafficking. The evidence was introduced, we have noted, to explain the background of the investigation and the importance of the investigation to the department. The hearing officer made it clear that he was not admitting the evidence for the purpose of establishing that plaintiff was involved in the illegal activities. He stated “I’m definitely unable to rule or even understand this case unless we go into all aspects of it.” In response to plaintiff’s inquiry as to the purpose of the evidence the hearing officer replied: “Obviously for background because it wasn’t alleged that he did these things specifically.” We find no error in the introduction of the evidence.
 

 IV
 

 The findings of the board support the decision. The finding to which plaintiff objects is that “A person working in a laboratory and testifying in court on behalf of the State in narcotics cases loses most of his credibility if he constantly associates with drug pushers and addicts.” Plaintiff argues that there was no evidence that he was involved with drug pushers and addicts.
 

 There was no evidence to support a charge that plaintiff was involved in drug trafficking or with pushers or addicts. Plaintiff’s argument, however, misinterprets the finding. The board did not find that plaintiff
 
 *915
 
 had associated with drug pushers and addicts; rather, it found that plaintiff’s credibility would be lost if it were established that he has such associations. This finding was concerned with the importance of the investigation and the resulting duty of plaintiff to cooperate with the department. The remainder of the finding, omitted in plaintiff’s brief, is: “After the investigation was initiated, [petitioner] had a duty to cooperate and supply the requested information.” The finding was in accordance with the board’s duty to consider the importance of the investigation and the relevance of the requested information to the investigation, and thus supports the decision of the board.
 

 V
 

 Plaintiff argues that finding number IV of the board’s decision is not supported by the evidence. The finding was that the informant had told agents of the department that plaintiff had frequently supplied her with narcotics and other controlled substances. Plaintiff argues that the only evidence in support of that finding was hearsay and that hearsay cannot support a finding in a State Personnel Board action. Since the evidence in support of the finding, as we shall see, was not hearsay, we reject plaintiff’s contention.
 

 Hearsay evidence is evidence of a statement that was made (other than by a witness while testifying at the hearing) and which is offered to prove the truth of the matter asserted. (Evid. Code, § 1200.) (7) It is true that if the evidence of the accusations by the informant were offered to prove that plaintiff did supply her with narcotics then the evidence would be hearsay. The evidence, however, was not offered for that purpose. The hearing officer made it clear that he was not considering the evidence in support of charges of drug trafficking, but that he was considering the evidence to determine the purpose of the department’s investigation. The evidence was thus admitted solely to prove that allegations had been made which justified the department’s investigation and request for information from plaintiff. The evidence was not hearsay for that purpose.
 

 Plaintiff contends that finding VIII of the board’s decision is not supported by the evidence. Finding VIII recites that plaintiff removed hashish in solid form from the destruction inventory stating that he wished to use the hashish for a control standard. The finding goes on to state that plaintiff did not log the hashish into the control standard log book at the laboratory as required by federal law, that plaintiff violated
 
 *916
 
 the court order by removing the hashish from the burn, and that he violated other laws and regulations by failing to properly register the hashish in the laboratory log book.
 

 Plaintiff admitted that he had taken the hashish from the burn inventory and that he had not registered it into the laboratory log book. In explaining the burn procedure one of the officers involved on the day plaintiff took the hashish stated that when there is to be a burn the officers in charge obtain a letter from a judge giving approval for the destruction of the particular contraband involved, that the burn is done in an approved incinerator, and that somebody from the state must be there to guarantee that the items are burned and that they have not been tampered with. Plaintiff did not contest that the materials were scheduled for destruction under a court order. An assistant director for the Department of Justice stated while testifying; “The materials go in for destruction under court order.” Counsel for plaintiff replied “We know that.” A copy of the destruction order was admitted into evidence at the hearing. The evidence thus supports the finding that plaintiff removed materials from destruction under a court order.
 

 The managing criminalist of the Stockton regional office of the Department of Justice testified that federal statutes require that all drugs on hand be registered in the log book. He further testified that state procedure requires that standards be logged in. Although there was some confusion generated by the testimony of the senior criminalist in the Stockton office, careful review of the record clarifies that matter. The criminalist testified that for marijuana and hashish standards the office would have to make up its own since such standards were not available from department sources. When standards were made from contraband they were often not logged in as standards. Nevertheless, it was clear from his testimony that the drugs must be logged in, either as a standard or in solid form. Thus the criminalist testified that when a drug is brought into the laboratory it should be accounted for. He further testified that the drug must be registered in either solid or liquid form, and that there should be a record of the drug. It was established that there was no record in the laboratory for the hashish plaintiff took from the burn. This evidence supports the finding that plaintiff should have logged the hashish in either in solid form or as a standard, and thus supports the finding that plaintiff violated laws and regulations in failing to do so.
 

 
 *917
 
 VI
 

 Plaintiff finally contends that the discipline imposed was excessive. A determination of penalty by an administrative agency will not be disturbed unless there has been an abuse of the agency’s discretion.
 
 (Shelly
 
 v.
 
 State Personnel Bd.
 
 (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774].) While an administrative agency has broad discretion in the imposition of penalty, that discretion is not unlimited.
 
 (Ibid.)
 
 In considering whether an abuse of discretion occurred in the discipline of a public employee, the overriding consideration is the extent to which the employee’s conduct resulted in, or if repeated is likely to result in, harm to the public service.
 
 (Id.,
 
 at p. 218.) Other factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.
 
 (Ibid.)
 

 We have noted the seriousness of the charges made by the informant against plaintiff and the importance of the investigation to resolve those charges. In light of those factors plaintiff’s unjustified refusal to cooperate with the investigation could only result in serious harm to his public service. Plaintiff’s supervisor testified that the unresolved charges against plaintiff would cast discredit not only upon his laboratory results, but upon the entire department as well. We find no abuse of discretion in dismissal for plaintiff’s insubordination and willful disobedience to department orders. Likewise we find no abuse of discretion in dismissal for plaintiff’s failure to observe proper laboratory standards in acquiring drugs to be used as a standard and in failing to properly register those drugs in the log book. The failure of the department laboratory to be able to account for the drugs in its possession would have adverse consequences to the department’s credibility on results it obtained.
 

 The judgment is affirmed.
 

 Puglia, P. J., and Paras, J., concurred.
 

 A petition for a rehearing was denied July 24, 1979, and appellant’s petition for a hearing by the Supreme Court was denied August 22, 1979. Bird, C. J., did not participate therein.
 

 [1]
 

 We note that plaintiff’s contention that the request for information violated his right to privacy must be rejected pursuant to the opinion in
 
 Law Students Research Council
 
 v.
 
 Wadmond
 
 (1970) 401 U.S. 154 [27 L.Ed.2d 749, 91 S.Ct. 720], Certain law students objected to a requirement of the New York Bar that they submit third-party affidavits attesting to the applicant’s good moral character, which included questions calculated to reveal the extent and nature of the affiant’s acquaintance with the applicant. The Supreme Court stated “We think it borders on the frivolous to say that such an inquiry offends the applicant’s ‘right to privacy protected by the First, Fourth, Ninth and Fourteenth Amendments.’ ” (401 U.S. at p. 160 [27 L.Ed.2d at p. 757].)