[Civ. No. 53569. First Dist., Div. Three. Jan. 26, 1983.]

CIVIL SERVICE ASSOCIATION, LOCAL 400, SEIU, AFL-CIO et al.,
Plaintiffs and Appellants, v.
CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF
SAN FRANCISCO et al., Defendants and Respondents.

## COUNSEL

William A. Sokol, Vincent A. Harrington, Jr., and Van Bourg, Allen, Weinberg & Roger for Plaintiffs and Appellants.

George Agnost, City Attorney, and Stephanie M. Chang, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**SCOTT, J.**—Appellants Anita Andrades and Civil Service Association, Local 400[1] appeal from the denial of a petition for writ of mandate whereby Andrades sought reinstatement as a clerk-stenographer with the San Francisco Police Department. We must decide whether legislation which prohibits any disciplinary action against peace officers for refusing to submit to a polygraph test offends constitutional equal protection principles because civilian police department employees are not similarly protected.

---

[1]Local 400 is a recognized employee organization within the meaning of Government Code section 3501, subdivision (b).

## I

The facts are not in dispute. Appellant Andrades was a permanent employee of the City and County of San Francisco, and worked in the criminalistics division of the crime lab of the city's police department. In May 1979, the department commenced an investigation of narcotics missing from the lab, and Andrades became the focus of that investigation, for several reasons. The nature of the loss and the procedures used in the lab indicated theft by someone who had access to its storage area, but who was not a chemist. Appellant, a clerk-stenographer, had such access. In addition, she had been experiencing numerous problems with her husband, who had a record of drug-related arrests and who had been threatening her. She was Mirandized and questioned by Sergeant James Tedesco, and denied any knowledge of the losses. He then "explained the difference between a criminal and administrative investigation," and told her that as part of an administrative investigation, he could require her to answer any questions truthfully. He ordered her to appear for a polygraph examination. When she failed to appear, she was charged with refusing to obey a lawful order of a superior, in violation of section 2.45 of the Rules and Procedures of the San Francisco Police Department.

After a civil service commission hearing, pursuant to section 8.341 of the Charter of the City and County of San Francisco, appellant was ordered terminated. Seeking reinstatement, she petitioned for a writ of mandate. She argued that (1) she was not a member of the department within the meaning of rule 2.45, and (2) the classification created by Government Code section 3307, which prohibits any disciplinary action against a public safety officer for refusing to submit to a polygraph test, denied her equal protection. Denying her petition, the trial court concluded that: (1) she was a member of the department; (2) section 3307 was inapplicable to charter cities such as San Francisco; (3) she had not established any denial of equal protection; and (4) she had been properly terminated.

## II

In relevant part, section 2.45 of the Rules and Procedures of the San Francisco Police Department provides, "[a member] shall strictly obey and promptly execute the lawful orders of his superior officers." First, appellant contends that as a civilian employee, she was not a member of the department for purposes of application of rule 2.45. Therefore, she reasons, she was not subject to termination for violation of that rule. The contention is without merit. Section V of the department's rules and procedures defines "Member[s]" as "[t]he officers and employees of the department." "Police Employee[s]" are "[a]ll persons other than officers appointed to the department in any permanent or temporary Civil Service classification." Appellant urges that despite that plain

language, this court should conclude that she was not a member, to avoid reaching the constitutional issue presented. We are not free, however, to ignore the unambiguous language of the rules. (See *Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46].)

III

Labor Code section 432.2 prohibits an employer from "demanding or requiring" any applicant for employment or any employee to submit to or take a polygraph, lie detector, or similar test as a condition of employment or continued employment. While the section has been described as suggesting a "basic legislative disapproval of employer-administered polygraph tests" (43 Ops.Cal.Atty.Gen. 25, 27 (1964)), its prohibitions do not apply to any public employer.[2] Nevertheless, notwithstanding the limitations of section 432.2, police officers cannot be compelled to take such tests. The Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq., hereafter the Act) sets forth a list of basic rights and protections which must be afforded all peace officers by the public entities which employ them. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874]; *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191].) Section 3307 of the Act allows officers to refuse to submit to a polygraph examination, and prohibits any disciplinary action or other recrimination for such a refusal.[3]

Appellant contends that terminating her for refusing to submit to a polygraph test is a denial of equal protection, because police officer members of the department cannot be similarly terminated. At trial respondent, the Civil Service Commission of the City and County of San Francisco, argued that the Act was not applicable to charter cities such as San Francisco, and that therefore both officers and civilian employees of the city's police department are subject to such termination. The trial court agreed. Recently, however, the Supreme

---

[2]Labor Code section 432.2 provides: "(a) No employer shall demand or require any applicant for employment or prospective employment or any employee to submit to or take a polygraph, lie detector or similar test or examination as a condition of employment or continued employment. The prohibition of this section does not apply to the federal government or any agency thereof or the state government or any agency or local subdivision thereof, including, but not limited to, counties, cities and counties, cities, districts, authorities, and agencies. [¶] (b) No employer shall request any person to take such a test, or administer such a test, without first advising the person in writing at the time the test is to be administered of the rights guaranteed by this section." (Amended by Stats. 1981, ch. 316, § 1, p. 1456.)

[3]Government Code section 3307 provides: "No public safety officer shall be compelled to submit to a polygraph examination against his will. No disciplinary action or other recrimination shall be taken against a public safety officer refusing to submit to a polygraph examination, nor shall any comment be entered anywhere in the investigator's notes or anywhere else that the public safety officer refused to take a polygraph examination, nor shall any testimony or evidence be admissible at a subsequent hearing, trial, or proceeding, judicial or administrative, to the effect that the public safety officer refused to take a polygraph examination."

Court held that the Act may be constitutionally applied to charter cities, as its objective, the maintenance of stable employment relations between police officers and their employers, is a matter of statewide concern. (*Baggett* v. *Gates, supra,* 32 Cal.3d at pp. 139-140.) Accordingly, we must consider appellant's equal protection argument.

Initially, we stress that appellant does *not* argue that the distinction drawn between public and private employees by Labor Code section 432.2 creates an unconstitutional classification. ■ Accordingly, we will not consider that question, except to note that " '[i]n the course of his work, a public officer or employee must yield some of the privileges which are enjoyed by the citizenry at large.' [Citation.]" (*Szmaciarz* v. *State Personnel Bd.* (1978) 79 Cal.App.3d 904, 916 [145 Cal.Rptr. 396].) Unlike a private employee, a public employee is "directly, immediately, and entirely responsible to the city or State which is his [or her] employer. . . . He [or she] is a trustee of the public interest, bearing the burden of great and total responsibility to his [or her] public employer." (*Gardner* v. *Broderick* (1968) 392 U.S. 273, 277-278 [20 L.Ed.2d 1082, 1086-1087, 88 S.Ct. 1913].) While a public employee cannot be forced to give an answer which may tend to incriminate him or her in criminal proceedings, he may be required to choose between disclosing information and losing his employment. (*Id.,* at p. 278 [20 L.Ed.2d at p. 1086]; see *Steinmetz* v. *Cal. State Board of Education* (1955) 44 Cal.2d 816, 824-825 [285 P.2d 617].)

First, relying on *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], appellant contends that because her termination involved a "fundamental vested right" to continued employment, our analysis of her equal protection claim must be predicated on the "strict scrutiny" test reserved for legislative classifications which touch upon "fundamental interests." (See, e.g., *People* v. *Olivas* (1976) 17 Cal.3d 236, 243 [131 Cal.Rptr. 55, 551 P.2d 375].) A similar argument was rejected as specious by the Supreme Court in *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917]. The court explained that under *Strumsky*, the " 'fundamental right' category does not identify areas in which substantive legislative judgments are in any manner constitutionally suspect or justify unusual judicial scrutiny; rather, that category simply encompasses those quasi-judicial administrative decisions that have 'an impact on the individual "sufficiently vital . . . to compel a full and independent review" by the court.' [Citation.]" (*Id.,* at p. 83.) The court added, ". . . [it is] abundantly clear that the applicability of the independent judgment standard of review does not in any sense suggest that legislative measures pertaining to the individual interest at issue are properly subject to strict scrutiny review." (*Ibid.*)

■ A fundamental interest for purposes of equal protection review is a right explicitly or implicitly guaranteed by either the California or the United States Constitution. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18 [112 Cal.Rptr. 786, 520 P.2d 10]; see *People* v. *Olivas, supra,* 17 Cal.3d at pp. 245-246; see also *Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252 [172 Cal.Rptr. 866, 625 P.2d 779]; *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219]; *Serrano* v. *Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929].) An individual has no constitutional right, either express or implied, to public employment. (*Bagley* v. *Washington Township Hospital Dist.*[4] (1966) 65 Cal.2d 499, 503 [55 Cal.Rptr. 401, 421 P.2d 409].) Accordingly, we must presume that the legislation creating the classification is constitutional, and determine only whether the distinctions drawn bear some rational relationship to a conceivable legitimate state purpose. (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 16.) In other words, the classification must be found to rest upon " 'some reasonable differentiation fairly related to the object of regulation.' " (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 787 [160 Cal.Rptr. 102, 603 P.2d 19]; see also *United States Steel Corp.* v. *Public Utilities Com.* (1981) 29 Cal.3d 603, 611-612 [175 Cal.Rptr. 169, 629 P.2d 1381].)

We briefly restate the substance of the classification at issue. Appellant has focused narrowly on the distinction between officer and nonofficer members of the San Francisco Police Department which results from Government Code section 3307. More accurately stated, however, the distinction at issue is that drawn between public safety officers and other public employees. As are many other public employees, both officer and nonofficer members of the police department may be subject to termination for insubordination, i.e., the refusal to obey an order which a superior is entitled both to give and to have obeyed. (See Charter of the City and County of San Francisco, §§ 8.341, 8.343; see also Gov. Code, § 19572, subd. (e); *Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314, fn. 7 [142 Cal.Rptr. 439, 572 P.2d 53]; *Forstner* v. *City etc. of San Francisco* (1966) 243 Cal.App.2d 625, 632 [52 Cal.Rptr. 621].) Because of the protections afforded officers by the Act, however, those officers are the only public employees absolutely protected from dismissal for refusal to submit to a polygraph examination.

---

[4]We recognize, of course, that as a permanent civil service employee, appellant had a property interest or right in the continuation of her employment, and that respondent was compelled to comply with procedural due process requirements before terminating her. (See *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206-208 [124 Cal.Rptr. 14, 539 P.2d 774].) However, her right to these procedural safeguards does not mean that substantive legislation affecting her property interest is to be judged under a "strict scrutiny standard." (See *Hernandez, supra,* 30 Cal.3d at pp. 81-82.)

We need not speculate as to the goals which the Legislature sought to achieve with the Act. The Act itself explains its purpose: ". . . effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that such stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers . . . wherever situated within the State of California." (Gov. Code, § 3301.) The Supreme Court agreed with the importance of that goal, and commented, "[t]he consequences of a breakdown in such relations are not confined to a city's borders. These employees provide an essential service. Its absence would create a clear and present threat not only to the health, safety and welfare of the citizens of the city, but also to the hundreds, if not thousands, of nonresidents who daily visit there. Its effect would also be felt by the many nonresident owners of property and businesses located within the city's borders. Our society is no longer a collection of insular local communities. Communities today are highly interdependent. The inevitable result is that labor unrest and strikes produce consequences which extend far beyond local boundaries." (*Baggett* v. *Gates, supra,* 32 Cal.3d at p. 140.) The court described the Act as a "catalogue of the minimum rights [citation] the Legislature deems necessary to secure stable employer-employee relations [citation]" (*id.,* at p. 135), and stated, "there is a direct, substantial connection between the rights provided by the Bill of Rights Act and the Legislature's asserted purpose." (*Id.,* at p. 140.)

While the court did not expressly analyze the relationship between each right provided and the legislative purpose, the connection between Government Code section 3307 and that purpose is clear. The use of polygraph examinations and similar tests by employers has been widely criticized by labor unions and other employee organizations. (See, e.g., Craver, *The Inquisitorial Process in Private Employment* (1977) 63 Cornell L.Rev. 1, 28; *United States* v. *DeBetham* (S.D.Cal. 1972) 348 F.Supp. 1377, 1390.) Prohibiting recriminations for refusing such tests eliminates one area of potential employer-employee discord.

As appellant correctly notes, prior to the enactment of the Act, several California courts had upheld dismissals of police officers for refusing to submit to polygraph examinations. (*Fichera* v. *State Personnel Board* (1963) 217 Cal.App.2d 613, 620-622 [32 Cal.Rptr. 159]; *Frazee* v. *Civil Service Board* (1959) 170 Cal.App.2d 333, 334-336 [338 P.2d 943]; *McCain* v. *Sheridan* (1958) 160 Cal.App.2d 174, 176-178 [324 P.2d 923].)[5] These courts empha-

---

[5]Courts in several other states have upheld similar dismissals. (See Annot., Refusal to Submit to Polygraph Examination as Ground for Discharge or Suspension of Public Employees or Officers (1982) 15 A.L.R.4th 1207.)

sized the position of confidence held by police officers, and their duty to cooperate fully in the investigation of crime. " '. . . Among the duties of police officers are those of preventing the commission of crime, assisting in its detection, and of disclosing all information known to them which may lead to the apprehension and punishment of those who have transgressed our laws. When police officers acquire knowledge of facts which will tend to incriminate any person, it is their duty to disclose such facts to their superiors and to testify freely concerning such facts when called upon to do so before any duly constituted court or grand jury. It is for the performance of these duties that police officers are commissioned and paid by the community, and it is a violation of said duties for any police officer to refuse to disclose pertinent facts within his knowledge even though such disclosure may show, or tend to show, that he himself has engaged in criminal activities.' " (Fn. omitted.) (*Frazee* v. *Civil Service Board, supra,* 170 Cal.App.2d at p. 335.) Appellant argues persuasively that the protection now afforded officers by Government Code section 3307 is incongruous in light of these judicial discussions of their duties. We must presume, however, that the Legislature was aware of these decisions when it enacted the Act. (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977-978 [140 Cal.Rptr. 669, 568 P.2d 394].) The Legislature has apparently decided that the need to maintain peaceful officer-employer relations outweighs any contribution to crime detection which might be gained by requiring officers to submit to polygraph examinations.

■ Is there a rational basis for protecting police officers alone among public employees from employer-administered polygraph tests? The Supreme Court has already agreed with the Legislature that avoiding labor unrest among police officers is so critical that it is a matter of statewide concern which justifies a limited impingement on charter cities' general regulatory power over their employees. (See *Baggett* v. *Gates, supra,* 32 Cal.3d at p. 140.) We can only conclude that the Legislature must have determined that maintaining labor peace among public safety officers is more critical than among other public employees. We may not agree that that determination is either wise or absolutely equitable. Nevertheless, we cannot say that the Legislature could not rationally conclude that the threat to the citizens of the state which might result from an absence of police services is greater than that which might result from the interruption of any other public service. As the classification rests on a " '. . . reasonable differentiation fairly related to the object of legislation . . .' " (*Hays* v. *Wood, supra,* 25 Cal.3d at p. 787), it does not offend equal protection principles.

## IV

Appellant also contends that terminating her solely because of her refusal to submit to a polygraph examination was arbitrary and capricious, because she

did not refuse to answer questions about the missing narcotics and because polygraph evidence is of no probative value. We disagree.

It is true that the general rule in this state has been that the results of polygraph tests are not admissible at trial. (*People* v. *Jones* (1959) 52 Cal.2d 636, 653 [343 P.2d 577]; *People* v. *Thornton* (1974) 11 Cal.3d 738, 763 [114 Cal.Rptr. 467, 523 P.2d 267], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) In addition, at least one court has held that polygraph evidence is insufficiently reliable for admission into evidence at an administrative hearing. (*Aengst* v. *Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 275, 283 [167 Cal.Rptr. 796].) It is also true, however, that despite the general rule, polygraph evidence may be admitted at trial pursuant to a stipulation by both parties. (*People* v. *Trujillo* (1977) 67 Cal.App.3d 547, 554 [136 Cal.Rptr. 672].) Moreover, in *Witherspoon* v. *Superior Court* (1982) 133 Cal.App.3d 24 [183 Cal.Rptr. 615] one court recently rejected a blanket exclusion of polygraph evidence, and ordered an evidentiary hearing on the expert qualification of a polygraph examiner and on the validity of the premises upon which his opinion was based. (*Id.*, at pp. 33-35.) In short, appellant's assertion that the results of a polygraph are always inadmissible is open to some doubt.

What is more important, however, is that despite the tests' arguable reliability and inadmissibility, numerous courts in this state and in other states have upheld their use in internal investigations in police departments, provided that the questions relate specifically, directly, and narrowly to the performance of the employee's official duties. (See, e.g., *Fichera* v. *State Personnel Board, supra,* 217 Cal.App.2d at pp. 620-622; *Frazee* v. *Civil Service Board, supra,* 170 Cal.App.2d at pp. 334-336; *McCain* v. *Sheridan, supra,* 160 Cal.App.2d at pp. 176-178; *Seattle Police Officers' Guild* v. *City of Seattle* (1972) 80 Wn.2d 307 [494 P.2d 485, 489]; see Annot., *supra,* 15 A.L.R.4th 1207.)

In *Szmaciarz* v. *State Personnel Bd., supra,* 79 Cal.App.3d 904, this court held that a public employee other than a sworn peace officer could be terminated for refusing to submit to a polygraph. During a Department of Corrections investigation into employee involvement in the traffic of marijuana to San Quentin inmates, informants reported that a particular correctional officer had been bringing the drug into the prison. The court held that although statements obtained from that officer under threat of dismissal could not be used in any criminal prosecution against him, the department was justified in advising him that he could be dismissed for refusing to answer questions or for refusing to submit to a polygraph. (*Id.*, at p. 916.) In support of its holding, the court emphasized the officer's "peculiar and delicate position in society," which required him to "answer questions posed by his superiors that concern the welfare of the inmates and that may reflect on the image a correctional officer

may project to the public." (*Ibid.*) In other words, given the nature of the officer's responsibilities and all of the circumstances of the investigation, the order that he submit to the polygraph or be dismissed was reasonable. (See *Frazee, supra,* 170 Cal.App.2d at pp. 335-336; see also *Rivera* v. *City of Douglas* (1982) 132 Ariz.App. 117 [644 P.2d 271, 275].)

■ We emphasize, of course, that had appellant agreed to submit to the polygraph, its results could not have been used against her in any subsequent criminal proceedings, as a statement obtained under threat of removal from a job is deemed to be coerced. (*Garrity* v. *New Jersey* (1967) 385 U.S. 493, 499-500 [17 L.Ed.2d 562, 566-567, 87 S.Ct. 616]; *Szmaciarz* v. *State Personnel Bd., supra,* 79 Cal.App.3d at p. 917.) To avoid Fifth Amendment objections to the use of polygraphs in internal investigations, we agree with those courts which have held that before being ordered to take a polygraph, an employee must be notified: (1) that the questions will relate specifically and narrowly to the performance of his official duties; (2) that the answers cannot be used against him in any subsequent criminal prosecution; and (3) that the penalty for refusing is dismissal. (*Rivera* v. *City of Douglas, supra,* 644 P.2d 271, 275; *Gandy* v. *State* ex rel. *Div. of Invest. & Narc.* (1980) 96 Nev. 281 [607 P.2d 581, 584]; *Seattle Police Officers' Guild* v. *City of Seattle, supra,* 494 P.2d 485; see also *Kelly* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 905, 913-914 [156 Cal.Rptr. 795].) In short, the employee should be advised of his options and the consequences of his choice. (*Rivera, supra,* 644 P.2d at p. 275.)

■ An administrative body has broad but not unlimited discretion in the imposition of discipline. The overriding consideration is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, harm to the public service. Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. In an administrative proceeding to review the determination of the penalty by an administrative body, that determination will generally not be disturbed unless there has been an abuse of discretion. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at pp. 217-218.)

■ Appellant was neither a sworn public safety officer nor a correctional officer in a prison. Nevertheless, as one of the few police department employees with access to the area of the crime lab where narcotics were stored, she too occupied a "peculiar and delicate position in society," or a position of public trust. She does not dispute the accuracy of any of the facts which caused suspicion to be focused on her during the investigation of the missing narcotics. The importance to both the public and the department of determining how those narcotics disappeared from the police laboratory is obvious. (Cf. *Kelly* v. *State Personnel Bd., supra,* 94 Cal.App.3d at p. 917.) After questioning appellant

proved futile, it was neither arbitrary nor unreasonable for the investigating officer to attempt to ascertain additional information through a polygraph examination. While we find the record somewhat ambiguous as to precisely what Officer Tedesco told appellant before ordering her to take the polygraph, she does not argue that she thought its results could be used against her in a criminal proceeding, or that she did not realize she faced dismissal for her refusal. (Cf. *Gandy* v. *State* ex rel. *Div. of Invest. & Narc., supra,* 607 P.2d 581, 584.) Under all the circumstances, it does not appear that Officer Tedesco acted arbitrarily, capriciously, or unreasonably in ordering appellant to submit to a polygraph test, and it does not appear that she had any valid justification for refusing to follow that order. We find no abuse of discretion in her termination.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 20, 1983. Bird, C. J., was of the opinion that the petition should be granted.