[No. AO21059. First Dist., Div. Three. June 27, 1983.]

E. DANIEL ACKERMAN, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Appellant;
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL,
Real Party in Interest and Appellant.

396

COUNSEL

John K. Van de Kamp, Attorney General, Andrea S. Ordin, Chief Assistant Attorney General, and Marian M. Johnston, Deputy Attorney General, for Defendant and Appellant and for Real Party in Interest and Appellant.

Richard J. Romanski and Hession, Creedon, Hamlin, Kelly, Hanson & Brown for Plaintiff and Respondent.

OPINION

**FEINBERG, J.**—On this appeal by the California Highway Patrol (CHP) and the State Personnel Board (Board) from a judgment granting a peremptory writ of mandamus (Code Civ. Proc., § 1094.5) to compel the Board to reconsider the dismissal of respondent Ackerman, the only question is whether the penalty imposed constituted an abuse of discretion. The Board and CHP contend that the trial court erred by substituting its discretion for that of the employer and the Board. We agree and reverse.

In October 1981, Ackerman was served with a notice of punitive action charging that the alleged acts of misconduct described below, constituted grounds for dismissal under Government Code section 19572, subdivision (f) dishonesty and subdivision (p) misuse of state property.

 The facts as revealed by the record[1] are as follows:

Ackerman worked as a state traffic officer for 15 years and 10 months, and a motorcycle officer for 9 of these. He had one prior adverse action of a two days' suspension in 1973 for claiming sick leave for a day he participated in a trap shoot. His on the job performance was very good.

As cause for dismissal it was alleged that Ackerman: 1) misappropriated state-owned motorcycle parts and installed them on his privately owned motorcycle; 2) later denied that he had done so; and 3) used a dealer's name to order wholesale motorcycle parts without the dealer's consent.

In 1979 Ackerman bought a Kawasaki motorcycle. He decided to modify it and turn it into a showpiece. To assist him in the project he enlisted the

---

[1]The Board is a statewide administrative agency deriving its adjudicative powers from the state Constitution; its factual determinations must be upheld by a reviewing court, if they are supported by substantial evidence. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306] *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217, fn. 31 [124 Cal.Rptr. 14, 539 P.2d 774].)

aid of Mr. R. Weidling, manager of the Diablo Kawasaki dealership in Walnut Creek, who had sold him the motorcycle. Diablo Kawasaki also had the service and repair contract for the CHP in the Contra Costa area. On one occasion, Weidling permitted Ackerman to deal with his suppliers and order parts for the modification of the show motorcycle; these parts were shipped to Diablo Kawasaki and then charged to Ackerman. Ackerman exceeded this authority by ordering parts in the name of Diablo Kawasaki on another occasion and having them shipped to his home; thus he avoided paying the $25 sales tax or the retail markup.

In June 1980, Ackerman requested that he be issued the front forks[2] for a Kawasaki 1000 police special motorcycle from the CHP academy. He indicated that the forks were needed for his CHP motorcycle. The forks were issued to him and he placed them on his privately owned motorcycle. The academy later requested that he turn in the damaged forks from his CHP motorcycle. Ackerman then obtained damaged front forks from a Walnut Creek Police Department motorcycle and returned them to the CHP academy. He was not candid about the situation. The academy used older motorcycles for training purposes, and kept them around to "cannibalize" for spare parts.

On July 15, 1981, Ackerman after returning from a fishing trip to Alaska learned that the Walnut Creek Police Department had used a search warrant to pick up his private motorcycle. Ackerman called the Walnut Creek police and asked to talk about the matter. He then told the Walnut Creek police investigator that he had a minor collision with his CHP motorcycle and got replacement front forks for it from Sacramento. Ackerman stated that he put a used set of forks from a Walnut Creek Police Department motorcycle on his private motorcycle and that Mr. Weidling of Diablo Kawasaki had given him the used forks. On July 16, 1981, Ackerman again talked to the same Walnut Creek Police Department investigator and told him the truth. He stated that he got the forks from a wrecked motorcycle at the CHP academy and that he put the forks on his privately owned motorcycle. On the advice of counsel, after his dismissal, Ackerman gave the CHP $225 as payment for the front forks he obtained from the CHP academy.

The Board made the following pertinent determination:

Ackerman's actions would probably warrant some form of punishment less than dismissal if he was not a police officer. However, a police officer

---

[2]The forks are the frames that hold the front wheel. Police motorcycles have special heavy ones that can also be bought by the public; at the time of the hearing the price of new ones was $547. Ackerman's sole purpose was to balance the appearance of his show bike.

must be held to a higher standard than other employees. A police officer is expected to tell the truth. He obtained the forks from the CHP by stating that they were for his issued motorcycle; that was not true. He again made a false statement when he told the Walnut Creek police officer investigating the case that he had not placed the CHP forks on his private motorcycle. His dismissal is warranted.

The court below found that as a matter of law, the penalty of dismissal constituted an abuse of discretion under the standard of *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 218. ■ "The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. [Citations.] Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. [Citation.]" (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306].) ■ "In considering whether such abuse occurred in the context of public employee discipline, we note that *the overriding consideration* in these cases *is the extent to which the employee's conduct resulted in,* or if repeated is likely to result in '[h]arm to the public service'* [Citations.] Other relevant factors include *the circumstances surrounding the misconduct* and *the likelihood of its recurrence.* [Citation.]" (*Skelly* v. *State Personnel Bd., supra,* 124 Cal.App.3d at p. 218.) (Italics added.)

■ While the Board's findings could be more felicitously phrased to conform to the precise language of *Skelly,* quoted above, we think the standards were met here. ·

Ackerman's admitted theft and subsequent lie[3] not only discredited him but the entire agency. Ackerman deceived CHP academy personnel as to his intentions in taking the parts as well as to the parts he returned; his misuse of the dealer's name to obtain parts wholesale and escape state sales tax occurred around the same time. ■ Unlawful activity by a police officer warrants dismissal. (*Parker* v. *State Personnel Bd.* (1981) 120 Cal.App.3d 84, 88 [174 Cal.Rptr. 333]; *Hooks* v. *State Personnel Bd.* (1980) 111 Cal.App.3d 572, 577 [168 Cal.Rptr. 822].) ■ Further, "honesty is not considered an isolated or transient behavioral act; it is more of a continuing trait of character." (*Gee* v. *State Personnel Bd.* (1970) 5 Cal.App.3d 713, 719 [85 Cal.Rptr. 762].) "The CHP as a law enforcement agency charged with the public safety and welfare must be above reproach."

---

[3]Ackerman characterized as "bad judgment" his initial lie to the investigating officer. He explained that he "panicked" because he had just returned from a long trip and was afraid his new wife would have to bail him out of jail.

(*Fout* v. *State Personnel Bd.* (1982) 136 Cal.App.3d 817, 821 [186 Cal.Rptr. 452].) Ackerman's refusal to cooperate with the initial investigation could only result in serious harm to his public service. (See *Kelly* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 905, 917 [156 Cal.Rptr. 795].)

As CHP Captain Starr explained, CHP officers are held to the highest standard of behavior: the credibility and honesty of an officer are the essence of the function; his duties include frequent testifying in court proceedings. The administrative record included a July 1981 local newspaper article describing the misdemeanor charges filed against Ackerman. Although the criminal charges were subsequently dismissed, the public's respect for, and trust of, the CHP was affected.

The position of a CHP officer by its nature is such that very little direct supervision over the performance can be maintained. The CHP necessarily must totally rely on the accuracy and honesty of the oral and written reports of its officers as to their use of state time and equipment. "Any breach of trust must therefore be looked upon with deep concern. *Dishonesty in such matters of public trust is intolerable.*" (Italics added; *Wilson* v. *State Personnel Bd.* (1976) 58 Cal.App.3d 865, 882 [130 Cal.Rptr. 292]; dismissal of fish and game warden upheld for making false reports.)

Ackerman relies on a series of Board decisions judicially noticed by the trial court and included as an appendix to Ackerman's brief. In each of these, CHP officers received less severe penalties for inaccurate or duplicate claims for travel expenses. We find the instant record more analogous to *Wilson, supra,* 58 Cal.App.3d 865, 872, and *Washington* v. *State Personnel Bd.* (1981) 127 Cal.App.3d 636, 640 [179 Cal.Rptr. 637]. Washington, a state university supervisor, took university equipment home and was dismissed. In upholding his dismissal against a challenge identical to Ackerman's here, the court said at pages 642-643: "Dismissal is *indisputably appropriate* for the attempted theft of public property by a governmental employee." (Italics added.)

"There are certain professions which impose upon persons attracted to them, responsibilities and limitations on freedom of action which do not exist in other callings. Public officials such as judges, policemen, and school teachers fall into such a category." (*Board of Trustees* v. *Stubblefield* (1971) 16 Cal.App.3d 820, 824 [94 Cal.Rptr. 318]; see also, *Titus* v. *Civil Service Com.* (1982) 130 Cal.App.3d 357, 364-365 [181 Cal.Rptr. 699].) Given the higher standards applicable to CHP officers, the Board concluded that the possibility of recurrence and circumstances surrounding the conduct have less weight than the overriding one of harm to the public service. We cannot

say that, as a matter of law, it erred. The series of dishonest acts related to Ackerman's show motorcycle could also be seen as "recurring."

■■■ It may be that others might have decided that a term suspension rather than discharge was the appropriate sanction but "[t]he fact that reasonable minds may differ as to the propriety of the penalty imposed [will fortify] the conclusion that the administrative body acted within the area of discretion." (*Stanton* v. *State Personnel Bd.* (1980) 105 Cal.App.3d 729, 744 [164 Cal.Rptr. 557].) "Discretion is abused when the action exceeds the bound[s] of reason." (*Ng* v. *State Personnel Bd.* (1977) 68 Cal.App.3d 600, 605 [137 Cal.Rptr. 387].) Under the circumstances here, appellant's discharge did not "exceed the bounds of reason."

The judgment of the superior court ordering the issuance of a peremptory writ of mandamus is reversed and the decision of the State Personnel Board dated May 11, 1982, is reinstated.

White, P. J., and Barry-Deal, J., concurred.