[Civ. No. 40716. First Dist., Div. Two. Mar. 20, 1978.]

STEVEN J. SZMACIARZ, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

**COUNSEL**

Weissich & Heubach and Randolph E. Heubach for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Robert E. Murphy, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**WHITE (C. W.), J.**\*—Plaintiff and appellant Steven J. Szmaciarz appeals from a judgment denying his petition for writ of mandate to compel the State Personnel Board to vacate its decision suspending him for a five-month period without pay. Appellant contends on appeal: (1) that the burden of proof was improperly placed on him at the administrative hearing; (2) that the Board's decision was improperly based on uncorroborated hearsay; (3) that the Department of Corrections improperly detained and questioned him; (4) that he should have been allowed to assert his

---

\*Assigned by the Chairperson of the Judicial Council.

privilege against self-incrimination at the administrative hearing; (5) that his conduct was not job related; (6) that he was improperly charged; (7) that the penalty imposed constituted an abuse of discretion; and (8) that no penalty could be imposed until the Board's decision had been filed.

Prior to March 31, 1975, appellant was employed by the California Department of Corrections (hereinafter Department) at San Quentin Prison as a correctional officer, a position he had held for three and one-half years.

In January of 1975 the Department was conducting an investigation that was aimed at the elimination of employee involvement in the traffic of marijuana to prison inmates. In the course of this investigation Robert Briggs, a senior special agent with the Department, and William Nyberg, who was at the time an information officer with the Department, interviewed appellant on January 30, 1975. Appellant was interviewed because the Department had received information from informants that he was bringing marijuana onto the grounds of San Quentin.

Before appellant was asked very many questions, he was advised he would be required to answer the questions and take a polygraph test or he would automatically be dismissed. During this interview appellant told Briggs and Nyberg that he had used marijuana on a few occasions in the presence of friends who were not connected with the Department. Appellant also told the two interviewers that he had approximately three-quarters of an ounce of marijuana at his home. Appellant further stated to the two men that he had inadvertently brought three marijuana cigarettes onto the prison grounds in a regular cigarette package. When appellant discovered the marijuana cigarettes, he flushed them down a toilet.

On March 31, 1975, appellant was served with a "NOTICE OF PUNITIVE ACTION." The notice informed appellant that he was being dismissed and such dismissal was effective "at the close of business March 31, 1975." The notice provides: "Such punitive action is based on the following subsection of Government Code section 19572:

"(d) Inexcusable Neglect of Duty

"(f) Dishonesty

"(t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."[1]

The notice further provides that the punitive action was being taken because appellant maintains at his residence a supply of marijuana, has smoked marijuana in public and on one occasion brought three marijuana cigarettes with him onto the premises of San Quentin Prison.

On April 7, 1975, appellant denied the charges contained in the notice and requested a formal hearing. On August 7, 1975, a hearing was conducted at San Quentin before a hearing officer of the California State Personnel Board (hereinafter Board).

Appellant was called as a witness at the administrative hearing and asked questions regarding his possession and use of marijuana as well as his carrying of marijuana onto prison grounds. Appellant first argued that he could not be compelled to answer the questions because of possible self-incrimination. After being directed by the hearing officer to answer the questions, appellant was given a 10-minute recess in which to consider his course of action. After the recess, appellant answered the questions posed "under protest."

Appellant then testified that he had possessed marijuana in his home within the last three years and had smoked it in the presence of persons other than prison guards. Appellant also testified that he had inadvertently brought marijuana onto the prison grounds.[2]

---

[1]The "dishonesty" count was dismissed on appellant's motion at the administrative hearing.

[2]Appellant testified in relevant part as follows: "BY MR. HEUBACH:

"Q. Mr. Szmaciarz, with regard to the hand-rolled cigarette or cigarettes that you brought onto the prison grounds, how did you bring them on?

"A. In a cigarette pack.

"Q. Were there cigarettes in that cigarette pack also?

"A. Yes, there were.

"Q. How did you discover you had these marijuana cigarettes with you?

"A. I reached for a cigarette. I pulled the cigarette pack out of my pocket and reached for a cigarette and I seen the hand-rolled cigarettes in the pack.

"Q. Did you intentionally bring those three hand-rolled cigarettes onto the prison grounds?

"A. No, I did not.

"Q. How did they come to be in that cigarette pack?

"A. On my way to work that morning I picked up an opened pack of cigarettes. I put it in my pocket and came to work.

"Q. Were you aware at the time you picked up the cigarette pack it contained

At the hearing both Briggs and Nyberg testified regarding their January 30 interview with appellant. In addition, Nyberg testified that he assured appellant if he had only possessed marijuana and merely inadvertently brought three marijuana cigarettes onto the prison grounds, he would only receive a written reprimand. Nyberg recommended that appellant be dismissed because he believed appellant was involved in the traffic of marijuana to inmates.[3] Lewis H. Fudge, deputy warden at San Quentin, was of the opinion that use of marijuana and the inadvertent bringing of marijuana onto the prison grounds was such a breach of the conduct expected of a correctional officer as to warrant dismissal.

Testimony was received at the hearing that appellant was generally considered to be a "good" or "above average" correctional officer.

hand-rolled cigarettes?

"A. No.

"Q. Now, upon discovering the three hand-rolled cigarettes did you examine them in any fashion to determine what they contained?

"A. No.

"Q. Did you open the paper to see what was inside the paper?

"A. No.

"Q. Did you smell them?

"A. No.

"Q. Did you smoke them?

"A. No.

"Q. What did you do with them?

"A. I proceeded to go to the bathroom and I flushed them down the toilet.

"Q. Immediately upon discovering them you flushed them down the toilet?

"A. Correct.

"Q. Was anybody present at the time you did this?

"A. No.

"Q. Perhaps that question was general. I will retract that question. Was anybody present at the time you first discovered the three hand-rolled cigarettes in the cigarette pack to the best of your recollection?

"A. No.

"Q. Was anybody present when you went to the bathroom and flushed them down the toilet?

"A. No.

"Q. In other words, you have no reason to conclude these two or three hand-rolled cigarettes were marijuana other than the fact they were hand-rolled cigarettes?

"A. Correct.

"MR. HEUBACH: I would then move to strike his testimony regarding the three hand-rolled cigarettes as being irrelevant.

"HEARING OFFICER: The objection will be overruled.

"MR. HEUBACH: I have no further questions."

[3]No evidence was adduced at the hearing that would support an inference that appellant was involved in the traffic of marijuana to inmates.

On August 25, 1975, the hearing officer issued his proposed decision. The hearing officer stated: "Correctional Officers work in a very dangerous and sensitive environment. The use of marijuana or any other illegal drug or substance cannot be condoned. Therefore, the appellant's conduct warrants punitive action under the provisions of Section 19572 of the Government Code." However, the hearing officer determined that given appellant's conduct, the punitive action of dismissal was too severe and reduced the penalty to a five-month suspension without pay.[4] On September 3, 1975, the Board adopted the proposed decision of the hearing officer. Appellant's petition for rehearing was denied on October 29, 1975.

On December 3, 1975, appellant caused a petition for writ of mandate to be filed in the Superior Court of Marin County naming the Department and the Board as defendants. It is alleged in the petition that the Department and the Board abused their discretion, exceeded their jurisdiction and denied appellant a fair trial in that: (1) the Board compelled appellant to give testimony against himself; (2) the Board based its decision on inadmissible hearsay; (3) the Board based its decision upon incompetent evidence; (4) the Board imposed punitive action against appellant without statutory authorization; (5) the Board's notice did not state sufficient facts to warrant punitive action; (6) there was no causal connection between the alleged misconduct of appellant and discredit to his employment; (7) there was no foundation laid for the Department's questioning of appellant before appellant was served with the notice; and (8) there was insufficient evidence adduced at the hearing to warrant any punitive action.

The Department and the Board answered and denied that they had exceeded their jurisdictions, abused their discretion or denied appellant a fair hearing. In a memorandum and minute order the Honorable Joseph G. Wilson stated he had exercised his independent judgment and determined that the weight of the evidence sustains the charges against appellant. The trial court also determined that the hearing officer had properly ruled on appellant's privilege against self-incrimination, the right of the Department to interview appellant and whether appellant was properly charged with the correct subdivision of Government Code section 19572. The trial court also determined that the punitive action imposed was not an abuse of discretion.

---

[4]The suspension without pay was from March 31, 1975, to September 8, 1975.

Findings of fact and conclusions of law were filed on August 3, 1976. Judgment denying the petition for writ of mandate was entered on the same date. Appellant filed a timely notice of appeal from the judgment.

*Introduction*

 Appellant argues that the burden of proof in the administrative proceeding was on the Department. The Board agrees that the Department had such a burden and argues that it successfully carried that burden. Appellant, however, contends that the hearing officer shifted the burden of proof because he compelled appellant to testify against himself before the Department had offered any evidence against appellant. The issue of whether appellant was properly required to testify to his use and possession of marijuana will be discussed later in this opinion.

 Appellant claims that uncorroborated hearsay evidence is insufficient to support a finding of fact. Government Code section 11513, subdivision (c), provides: "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing, and irrelevant and unduly repetitious evidence shall be excluded."

Appellant points out that other than his own testimony, which he alleges was coerced, the only testimony which supports the finding that appellant possessed, used and inadvertently brought marijuana onto the prison grounds consisted of hearsay declarations; to wit, the testimony of Briggs and Nyberg regarding what appellant told them in the January 30 interview. Appellant overlooks the fact that the testimony of Briggs and Nyberg would be admissible in a civil action over an objection as an admission by a party. (Evid. Code, § 1220.) Since the hearsay evidence would have been admissible over an objection based on hearsay in a civil action, this evidence may support a finding of fact if it is not inadmissible on some other ground. (*Mumford* v. *Department of Alcoholic Beverage*

*Control* (1968) 258 Cal.App.2d 49, 51 [65 Cal.Rptr. 495]; see also *Martin v. State Personnel Bd.* (1972) 26 Cal.App.3d 573 [103 Cal.Rptr. 306]; *Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 546 [92 Cal.Rptr. 525].)

Therefore, this court must still consider the issue of whether the hearsay evidence testified to by Briggs and Nyberg was inadmissible on any other grounds.

*Questioning of Appellant*

 Appellant contends "that some minimum probable cause requirement must be demonstrated by a public agency before such agency properly is authorized to detain and question a Civil Service employee concerning his private affairs." Appellant argues that the testimony of Briggs that he received information from informants that appellant was bringing marijuana onto the grounds of San Quentin and the testimony of Nyberg that appellant's name "had come up" in a large investigation "about employee involvement in the traffic in narcotics to inmates in San Quentin" did not show any justification for detaining and questioning appellant and requiring him to submit to a polygraph test. Appellant therefore contends that the testimony regarding the statements he made to Briggs and Nyberg on January 30, 1975, should be stricken and disregarded.[5]

In considering the issue raised by appellant this court is mindful of the peculiar and delicate position police officers hold in society. This concept was treated by the court in *Christal* v. *Police Commission* (1939) 33 Cal.App.2d 564, 567-568 [92 P.2d 416], as follows: "Such officers are the guardians of the peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. Among the duties of police officers are those of preventing the commission of crime, of assisting in its detection, and of disclosing all information known to them which may lead to the apprehension and punishment of those who have

---

[5]The trial court impliedly found as did the hearing officer and the Board that adequate grounds existed for questioning appellant regarding his bringing of marijuana onto the grounds of San Quentin. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 339, pp. 3140-3141.) This court must sustain the findings of fact if they are supported by substantial evidence. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217, fn. 31 [124 Cal.Rptr. 14, 539 P.2d 774]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35-36 [112 Cal.Rptr. 805, 520 P.2d 29].)

transgressed our laws. When police officers acquire knowledge of facts which will tend to incriminate any person, it is their duty to disclose such facts to their superiors and to testify freely concerning such facts when called upon to do so before any duly constituted court or grand jury. It is for the performance of these duties that police officers are commissioned and paid by the community, and it is a violation of said duties for any police officer to refuse to disclose pertinent facts within his knowledge even though such disclosure may show, or tend to show, that he himself has engaged in criminal activities."

In *Fichera* v. *State Personnel Board* (1963) 217 Cal.App.2d 613 [32 Cal.Rptr. 159], a California state police officer refused to take a polygraph test in connection with an investigation then being conducted by the state police into the circumstances of the disappearance of a camera from a lost and found locker of the California State Police and was dismissed. The court in holding the dismissal was valid stated: "Orders to take polygraph tests by police officers have been sustained in *McCain* v. *Sheridan,* 160 Cal.App.2d 174 [324 P.2d 923], and *Frazee* v. *Civil Service Board,* 170 Cal.App.2d 333 [338 P.2d 943]. In *McCain,* the officer had at first asked for the test, and later refused to obey an order to take it, but if there existed some slight element of estoppel, this was not the basis for the decision; the basis was the need for confidence of the public in officers who have sworn to uphold and enforce the laws, which require officers, under certain circumstances, to risk self-incrimination, not in defense against accusation of criminal conduct, but in the course of maintaining their positions. In *Frazee,* the same decision was made in a case where the officer had not at any time requested the test. In both cases, the distinction between the constitutional right of a private person to refuse to incriminate himself and the special privilege of holding a law enforcement office, laid down in *Christal* v. *Police Commission,* 33 Cal.App.2d 564, 568 [92 P.2d 416], was cited." (*Id.,* at pp. 620-621.)

In *Fichera,* the appellants argued that since they were members of the California State Police, they did not hold "the peculiar and delicate position of regular police officers" and could not be held to the same duties. (*Id.,* at p. 621.) In rejecting this argument the court stated: "We find this to be without merit. Although their duties are exercised in and about state buildings and grounds, members of the state police are peace officers. They are paid by the state. They must be regarded as holding a position of confidence." (*Id.,* at p. 621.) The same rationale applies in the instant case. Appellant as a peace officer had a duty to cooperate with the investigation being conducted by the Department. Even if appellant's

name had not been mentioned in the course of the investigation, the Department would have been justified in questioning any or all of the correctional officers when investigating employee involvement in narcotics traffic in a state prison.

Appellant could have refused to answer the questions posed by Briggs and Nyberg, but, had he chosen to do so, the Department would have been justified in terminating his employment for such a refusal. ■ "A public employee, of course, cannot be forced to give an answer which may tend to incriminate him, but he may be required to choose between disclosing information and losing his employment." (*Steinmetz* v. *Cal. State Board of Education* (1955) 44 Cal.2d 816, 824-825 [285 P.2d 617], cert. den., 351 U.S. 915 [100 L.Ed. 1448, 76 S.Ct. 708]; *Hingsbergen* v. *State Personnel Bd.* (1966) 240 Cal.App.2d 914, 921-922 [50 Cal.Rptr. 59].) Or as stated by the court in *Christal* v. *Police Commission, supra,* 33 Cal.App.2d 564, 568: "As we view the situation, when pertinent questions were propounded to appellants before the grand jury, the answers to which questions would tend to incriminate them, they were put to a choice which they voluntarily made. Duty required them to answer. Privilege permitted them to refuse to answer. They chose to exercise the privilege, but the exercise of such privilege was wholly inconsistent with their duty as police officers. They claim that they had a constitutional right to refuse to answer under the circumstances, but it is certain that they had no constitutional right to remain police officers in the face of their clear violation of the duty imposed upon them."

"In the course of his work, a public officer or employee must yield some of the privileges which are enjoyed by the citizenry at large." (*Forstner* v. *City etc. of San Francisco* (1966) 243 Cal.App.2d 625, 632 [52 Cal.Rptr. 621].)

■ There can be no doubt that appellant, a correctional officer, whose duty it is to guard and care for the inmates at San Quentin holds a peculiar and delicate position in society. This duty requires that he answer questions posed by his superiors that concern the welfare of the inmates and that may reflect on the image a correctional officer may project to the public. Therefore, the Department was justified in questioning appellant and advising him if he refused to answer the questions or to submit to a polygraph, he would be dismissed.

*Appellant's Testimony at the Hearing*

 Appellant is apparently contending on appeal that he should have been allowed to assert his privilege against self-incrimination at the administrative hearing. He further asserts that the hearing officer should not be allowed to draw any inference from his silence because to do so would place the burden of proof on appellant.

 In *Garrity* v. *New Jersey* (1967) 385 U.S. 493 [17 L.Ed.2d 562, 87 S.Ct. 616], the United States Supreme Court held that when a policeman had been compelled to testify by the threat that otherwise he would be removed from office, the testimony that he gave could not be used against him in a subsequent criminal prosecution. The court stated: "We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." (*Id.,* at p. 500 [17 L.Ed.2d at p. 567].)

In *Spevack* v. *Klein* (1967) 385 U.S. 511 [17 L.Ed.2d 574, 87 S.Ct. 625], the United States Supreme Court ruled that a lawyer could not be disbarred solely because he refused to testify at a disciplinary proceeding on the ground that his testimony would tend to incriminate him.

In *Gardner* v. *Broderick* (1968) 392 U.S. 273 [20 L.Ed.2d 1082, 88 S.Ct. 1913], appellant, a New York City police officer sought reinstatement. Appellant, pursuant to a subpoena, appeared before a New York County Grand Jury which was investigating alleged bribery and corruption of police officers in connection with unlawful gambling operations. He was advised of his privilege against self-incrimination, but he was asked to sign a "waiver of immunity" after being told that he would be fired if he did not sign. Following his refusal he was given an administrative hearing and was discharged. The court in its opinion distinguished a lawyer, and in its holding in *Spevack* v. *Klein, supra,* 385 U.S. 511, from a police officer as follows: "Unlike the lawyer, [a policeman] is directly, immediately, and entirely responsible to the city or State which is his employer. He owes his entire loyalty to it. He has no other 'client' or principal. He is a trustee of the public interest, bearing the burden of great and total responsibility to his public employer. Unlike the lawyer who is directly responsible to his client, the policeman is either responsible to the State or to no one." (*Id.,* at pp. 277-278 [20 L.Ed.2d at p. 1086].) The court concluded that a policeman could be dismissed for refusing to answer questions stating: "We agree that these factors

differentiate the situations. If appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself ... the privilege against self-incrimination would not have been a bar to his dismissal."[6] (*Id.*, at p. 278 [20 L.Ed.2d at pp. 1086-1087].)

It is clear from the above cases that appellant's testimony at the administrative hearing is inadmissible at a later criminal prosecution. (*Hankla* v. *Governing Bd.* (1975) 46 Cal.App.3d 644, 653 [120 Cal.Rptr. 827].) ■ It also appears that if a peace officer refuses to answer questions posed regarding his official duties, he may be dismissed. Or as the United States Supreme Court stated in *Garner* v. *United States* (1976) 424 U.S. 648, 655 [47 L.Ed.2d 370, 378, 96 S.Ct. 1178]: "Unless the government seeks testimony that will subject its giver to criminal liability, the constitutional right to remain silent absent immunity does not arise. An individual therefore properly may be compelled to give testimony, for example, in a noncriminal investigation of himself."

■ Appellant attempts to argue that his possession and use of marijuana did not pertain to his official duties. Appellant's contention overlooks the fact that the Department was investigating employee involvement in marijuana traffic to inmates. In light of the purpose of the investigation it seems entirely proper that the Department asked appellant if he possessed marijuana or if he had ever brought marijuana onto the prison grounds. It seems obvious that appellant's duties as a correctional officer at San Quentin include the duty to assist the Department in stopping the marijuana traffic to inmates.

■ Appellant's contention that a hearing officer could not draw an adverse inference from his failure to testify or to assert his privilege of self-incrimination must also fail. In *Baxter* v. *Palmigiano* (1976) 425 U.S. 308 [47 L.Ed.2d 810, 96 S.Ct. 1551], Palmigiano, a prison inmate of the Rhode Island Adult Correctional Institution, was charged by correctional officers with inciting a disturbance and disruption of prison operations. (*Id.*, at p. 312 [47 L.Ed.2d at pp. 817-818].) He was summoned before

---

[6]In *Gardner*, appellant was discharged from office, not for failure to answer relevant questions about his official duties but for failure to waive the immunity to which he was entitled, if he was required to testify despite his constitutional privilege given the authority of *Garrity* v. *New Jersey*, *supra*, 385 U.S. 493. The court concluded he could not be dismissed for failing to waive immunity although he could be dismissed for refusing to answer questions relating to the performance of his official duties.

the prison disciplinary board and informed, among other things, that he had a right to remain silent during the hearing but that if he remained silent, his silence would be used against him. The United States Supreme Court noted that the prison disciplinary action is a civil proceeding and the Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: ..." (*Id.,* at p. 318 [47 L.Ed.2d at p. 821].) The court also noted that the advice given Palmigiano that if he remained silent his silence would be used against him was "merely a realistic reflection of the evidentiary significance of the choice to remain silent." (*Id.,* at p. 318.) The court concluded: "The short of it is that permitting an adverse inference to be drawn from an inmate's silence at his disciplinary proceedings is not, on its face, an invalid practice; ..." (*Id.,* at p. 320 [47 L.Ed.2d at p. 822].)

The hearing officer in the instant case pointed out that the Department had the burden of proving that appellant should be dismissed, but also advised appellant that he "certainly cannot expect to be successful in this type of administrative proceeding ... unless you wish to testify in this hearing." In light of the fact that appellant had made admissions to Briggs and Nyberg, this comment appears to fall within the statement of *Palmigiano* of being "merely a realistic reflection of the evidentiary significance of the choice to remain silent."

*Government Code Section 19572, Subdivision (t)*

■ Appellant argues that a correctional officer's possession and use of marijuana and inadvertence in bringing three marijuana cigarettes onto the prison grounds is not job related and is not the type of behavior that causes discredit to the Department.

Government Code section 19572 provides: "Each of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list: ... [¶] (t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

In *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 513-514 [102 Cal.Rptr. 758, 498 P.2d 1006], the court held that the misbehavior under subdivision (t) does not have to be publicly known, resulting in actual discredit to the agency. The court found that the statute was addressed to the conduct of public employees, not to the publicity such

conduct might attract. (*Id.,* at p. 513.) The court then proceeded to quote with approval from *Orlandi* v. *State Personnel Bd.* (1968) 263 Cal.App.2d 32, 37 [69 Cal.Rptr. 177]: " 'The failure of good behavior must be of such a nature that it reflects upon the employee's job and cannot be just any behavior which the agency might consider improper,' but given this qualification, it held that 'Subdivision (t) refers to conduct which would reflect discredit on the employing agency or the position held by the person engaging in such conduct, regardless of whether publicized or not.' " (*Nightingale* v. *State Personnel Board, supra,* at pp. 513-514.)

In *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187 [107 Cal.Rptr. 852], the court considered the issue of whether a conviction of possession of marijuana during off-duty hours without more was sufficient to dismiss a tax representative trainee for the Department of Human Resources Development under the provisions of Government Code section 19572, subdivision (t). The court noted that misbehavior of an employee does not have to be publicly known, resulting in actual discredit to the agency to fall within the statute. The court pointed out that there is no obvious relationship between possessing marijuana off the job and the duties of a tax representative trainee. The court remanded the cause to the trial court for additional proof on the relationship between the failure of good behavior and the alleged harm to the public service and whether the failure of good behavior could reasonably result in the impairment or disruption of the public service. The court in reaching this conclusion stated: "In some factual contexts the obviousness of such relationship is clear. For example, *Orlandi* v. *State Personnel Bd., supra,* 263 Cal.App.2d 32—wherein there was 'ticket fixing' by a California Highway Patrol officer; and *Nightingale* v. *State Personnel Board, supra,* 7 Cal.3d 507—wherein a referee employed by the Division of Industrial Accidents intervened with other referees and the Attorney General in an effort to obtain special treatment for a friend. *In the case at bench, if the appellant had been an officer with the Bureau of Narcotic Enforcement, there could be little question that the conviction of possession of marijuana alone would justify disciplinary action.*" (*Id.,* at p. 194; italics added.)

It is difficult to give credence to appellant's argument that a correctional officer's violations of the drug laws by possession of marijuana and bringing marijuana onto the prison grounds are not job related. Correctional officers have a duty not to bring marijuana onto prison grounds.

Appellant next argues that he could not be charged under subdivision (t) of Government Code section 19572, but that he should have been charged under subdivision (k) dealing with conviction of crimes. Appellant alleges that a civil service employee may not be disciplined for alleged criminal conduct without a criminal conviction. Subdivision (k) provides: "Conviction of a felony or conviction of a misdemeanor involving moral turpitude" shall constitute cause for discipline of a public employee. Under subdivision (k) a public employee may be disciplined only for a conviction involving moral turpitude. As discussed above, a public employee may be disciplined for any misbehavior under subdivision (t) which relates to his employment. A public employee may be disciplined under subdivision (t) whether or not his conduct is criminal in nature and whether or not he has suffered a criminal conviction. To hold otherwise would mean a public agency would be precluded from disciplining an employee merely because, for whatever reason, a criminal conviction was not obtained.

*The Penalty*

Appellant also argues that a five-month, eight-day suspension without pay constituted a clear abuse of discretion.

It is well settled that the propriety of a penalty imposed by an administrative agency is a matter resting in the sound discretion of the agency and that its decision will not be disturbed unless there has been an abuse of discretion. (*Nightingale* v. *State Personnel Board, supra,* 7 Cal.3d 507, 515; *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 594 [43 Cal.Rptr. 633, 400 P.2d 745].) "[I]n reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh." (*Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901]; see also *Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 967 [103 Cal.Rptr. 455].) However, if the penalty imposed was under all the facts and circumstances clearly excessive, this will be deemed an abuse of discretion and this court is not powerless to act. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* at p. 594; *Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].) In determining whether there has been an abuse of discretion the Supreme Court of this

state has stated that "If reasonable minds might differ as to the propriety of the penalty imposed, this fact serves to fortify the conclusion that the [administrative body] acted within the area of its discretion." (*Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* at p. 594.)

■ Under the criteria stated in the above cases, the penalty imposed by the Board was not an abuse of discretion.

*Retroactive Pay*

■ Appellant finally contends even if the action of the Board is upheld he is still entitled to retroactive pay which accrued between March 31, 1975, and September 3, 1975, or between the date penalty was imposed until the Board's decision was filed.

In *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, the California Supreme Court established the right of a permanent state employee to procedural due process before discipline can be imposed. In the instant case that means appellant could not be suspended or terminated without pay until he had an administrative hearing.

Appellant concedes he did not raise this issue in the trial court and he only raised it on appeal in his closing brief. In *Wilson* v. *State Personnel Bd.* (1976) 58 Cal.App.3d 865 [130 Cal.Rptr. 292], the court was faced with a similar situation and stated: "The general rule is that contentions not raised in the trial court may not be raised for the first time on appeal. [Citation.] *Skelly* v. *State Personnel Board, supra,* did not change that basic rule." (*Id.,* at p. 883.)

We affirm the judgment.

Taylor, P. J., and Kane, J., concurred.