[No. B114582. Second Dist., Div. Three. Sept. 8, 1998.]

SHEILA PEGUES, Plaintiff and Respondent, v.
CIVIL SERVICE COMMISSION OF THE COUNTY OF LOS
ANGELES, Defendant;
EDDY S. TANAKA, as Director, etc., Real Parties in Interest and
Appellants.

## COUNSEL

De Witt W. Clinton and Lloyd W. Pellman, County Counsel, and Manuel A. Valenzuela, Principal Deputy County Counsel, for Real Parties in Interest and Appellants.

No appearance for Defendant.

Diane Marchant for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Eddy S. Tanaka, Director, County of Los Angeles Department of Public Social Services (the Department), and the County of Los Angeles (collectively, the County) appeal a judgment which granted Sheila Pegues's (Pegues) petition for writ of mandate and overturned her discharge from employment.

The essential issue presented is whether the trial court erred in determining discharge was an excessive penalty and in reinstating Pegues to her position.

We conclude the trial court abused its discretion by substituting its own judgment for that of the Civil Service Commission of the County of Los Angeles (the Commission), which had determined that discharge was an appropriate penalty for Pegues's dishonest application for food stamp benefits. We therefore reverse the judgment with directions to deny Pegues's petition.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual background.*

In March 1979, Pegues commenced her employment as an eligibility worker with the Department. At the time of her discharge, she held the position of eligibility worker II. Employees in that position are charged with "independently determining the initial and continuing eligibility for applicants and recipients of public assistance grants and programs within established guidelines and procedures" and "must exercise a knowledge of the laws, regulations and procedures governing the administration of public assistance grants and programs."

On April 19, 1993, Pegues signed a document known as PA 285, Responsibilities of Employees (hereafter PA 285), which provided, inter alia: "If you apply for, are now, or become a recipient of any public assistance or services administered by this Department, you must report immediately, truthfully and fully all information required on public assistance/services reporting forms. *You will be discharged if you provide late, false or incomplete information which is needed to determine your eligibility for public assistance/services.*" (Italics added.)

Also relevant here is section 9120 of the Department's personnel manual, which states in relevant part: "Non-Progressive Discipline [¶] There are some acts of misconduct which by their nature are not appropriate for progressive discipline. These acts are ones which the employee should have reasonably known to be unacceptable, without specific notice from the Department, or which are generally socially unacceptable. [¶] Such behavior includes, but is not limited to, *dishonesty*, theft, violent or disruptive behavior, insubordinate behavior, or behavior which is illegal or places the Department in violation of federal, state law or local ordinance or court orders. Behavior of this type should be disciplined by suspension, or, if warranted, discharge on the first occasion." (Italics added.)

The Northridge earthquake occurred on January 17, 1994. In response to this disaster, the Department instituted an emergency food stamp assistance program within the County.

On January 29, 1994, Pegues filled out an application for emergency food stamps and filed it at her workplace. The application required applicants to "[a]nswer the questions truthfully and completely," and warned that penalties would be imposed for giving "false information or withhold[ing] information to get food stamps." Pegues signed the application under penalty of perjury.

On the application, Pegues listed her husband and three children as living with her at the time of the earthquake. In response to question No. 7 inquiring into "the total amount of take home pay or other income" received or expected by household members during the "disaster benefit period," Pegues indicated zero.[1] Also, in response to question No. 8, which inquired into "all cash resources the persons" identified in the application "will be able to get to during the disaster benefit period," Pegues indicated $5 in cash on hand and nothing in checking and savings accounts.

Contrary to Pegues's claim her household income was zero, on January 21 and 28, 1994, Pegues's spouse, who was listed on the application, received income from his employer, Rockwell International. On January 28, 1994, Pegues received her County paycheck which was directly deposited into her checking account. Also, statements reflected Pegues and her husband had moneys in bank and credit union accounts during this time frame.

On January 31, 1994, Pegues was certified for receipt of food stamps in the amount of $446.[2]

Pegues was one of 1,410 Department employees who applied for the emergency food stamp benefits. As a result of information received from a federal agency that Department employees had been applying for emergency food stamps and an anonymous letter stating that Pegues had applied for such benefits, the Department undertook an investigation.

On April 28, 1994, Will Stewart, director of the Department's Bureau of Assistance Payments, issued a letter to employees (the Stewart letter). The letter, which was issued after the food stamp improprieties came to light, states in relevant part: "Findings of any of the following actions by employees will result in discharge: [¶] . . . [¶] Employee falsified application

---

[1] With respect to the duration of the benefit period, Pegues indicated she believed the period ran from January 17 through February 7, 1994. Susan Aguilar, district director of the Lancaster office, testified the period extended from January 24 through February 3, 1994. Irrespective of which of these disaster periods is correct, the record reflects Pegues's household received income during either of these intervals.

[2] Pegues alleged she did not actually receive the food stamps, and the Department conceded that fact.

(including information/eligibility criteria) *to obtain County Emergency Food Stamp Program benefits to which s/he was not entitled; . . .*" (Italics added.)

By letter dated September 13, 1994, the Department advised Pegues of its intention to discharge her for, inter alia, violation of Department Personnel Manual, section 9700, subdivision A-9 (failing to properly meet reporting responsibilities as a recipient of aid or services administered by the Department); subdivision A-11 (using official position or office for personal gain or advantage); subdivision A-15 (falsifying reports or documents); and subdivision D-11 (criminal, dishonest conduct while performing duties, or on County premises, or during working hours, or when such conduct is related to the employee's duties or interests of the Department). As stated in the letter, these violations were punishable by discharge on the first offense.

On October 17, 1994, Pegues and her representative met with Department representatives to discuss the charges.

By letter dated November 4, 1994, Pegues was informed of her discharge from County service. The reason cited for the discharge was Pegues's untruthful application on January 29, 1994.

2. *Administrative proceedings.*

In December 1994, the Commission granted Pegues's request for a hearing. The Commission specified the issues to be heard as follows: (1) the truth of the allegations in the Department's November 4, 1994, termination letter; and (2) if the allegations were true, the appropriateness of the discipline imposed.

In September 1995, following an evidentiary hearing, the hearing officer issued a recommended decision. The hearing officer's findings of fact included the following: On January 29, 1994, Pegues filled out an application for emergency food stamps. She submitted her application at her place of employment. Pegues listed her husband and three children as living with her at the time of the earthquake. Pegues indicated the total amount of take-home pay or other household income was zero. On January 28, 1994, one day before submitting the application, Pegues had received her regular County paycheck. On January 21 and 28, 1994, Pegues's husband had received his paycheck from Rockwell. At the time of her discharge, Pegues had been an eligibility worker for 15 years. Department rules prescribe discharge in cases of false or incomplete information provided by employees on applications for public assistance.

The hearing officer concluded Pegues was dishonest in completing her food stamp application by reporting "zero take home pay" for the persons

listed as members of her household. The hearing officer recommended the discharge be sustained.

On January 24, 1996, the Commission adopted the hearing officer's findings and recommendation as its final decision and sustained the Department's decision to discharge Pegues.

### 3. Trial court proceedings on mandate.

On September 3, 1996, Pegues filed her first amended petition for writ of mandate. On October 1, 1996, Pegues filed supplemental evidence in support of the petition, alleging disparate treatment in that similarly situated Department employees had not been discharged. The supplemental evidence produced by Pegues, consisting of the Stewart letter and Commission actions arising out of food stamp improprieties by four other Department employees, had not been submitted by Pegues to the Commission. The County objected to the supplemental evidence on the grounds Pegues had not raised the issue of disparate treatment at the administrative level, and in any event the evidence was irrelevant.

On October 23, 1996, after a hearing on the amended petition, the trial court took the matter under submission and then remanded the matter to the Commission for consideration of the issue of disparate punishment, in light of the supplemental evidence proffered by Pegues.

On April 16, 1997, the Commission considered Pegues's supplemental evidence in accordance with the trial court's order. The Commission found no disparate treatment with respect to punishment and sustained the discharge.

On April 21, 1997, Pegues filed a "supplemental verified petition" for writ of mandate, challenging the Commission's decision on remand. Additional briefing followed.

The trial court held a hearing on the supplemental petition and then granted the petition.

### 4. Trial court's rationale for its decision.

The statement of decision provides in relevant part: Pegues's bank records showed that both she and her husband continued to receive their regular wages, notwithstanding the earthquake, and had funds in their checking and savings accounts at the end of January and early February 1994. However,

"there is no evidence that these sums would have made [Pegues's] family of five ineligible for the food stamp benefit. [¶] For these reasons, and because [Pegues] never received any food stamps by her application, her discharge constitutes an abuse of discretion. Under the [Department's] policy, and a review of the comparable cases submitted for the Court's review ([Pegues's] 'Supplemental Evidence'), it was the practice and policy to reserve the penalty of discharge for employee/applicants who would not have been eligible for the food stamp benefit, even if they had correctly filled out their applications. [¶] Under this policy, [the Department] bore the burden of proving, not only that [Pegues] made false statements on her application, but that [Pegues's] financial circumstances made her ineligible for food stamps; [The Department] failed to carry this burden."

The judgment reversed the Commission's decision to sustain Pegues's discharge and directed the Department to reinstate Pegues to her former employment with all backpay and benefits.

5. *Subsequent proceedings.*

On August 4, 1997, the County filed a timely notice of appeal from the judgment entered July 15, 1997.

Thereafter, the County sought a writ of supersedeas to stay enforcement of the judgment. On October 9, 1997, this court granted the petition seeking supersedeas relief, thereby staying the order requiring immediate reinstatement and payment of backpay and benefits.

CONTENTIONS

The County contends the trial court abused its discretion: by reversing the Commission's decision on a legal theory, disparate treatment, which was never raised in the administrative proceedings; by allowing augmentation of the administrative record; and by substituting its judgment for that of the Commission on the issue of whether Pegues had been subjected to a disparate penalty. The County also asserts the Commission acted within its discretion in sustaining Pegues's discharge from county service for dishonest conduct.

DISCUSSION

1. *Trial court improperly enlarged the scope of the issues, but the ruling was harmless.*

 Following Pegues's amended petition for writ of mandate, the trial court received Pegues's supplemental evidence, wherein for the first time,

she raised the issue of disparate treatment by the Department. In entertaining this issue, the trial court committed error.

As explained in *City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1019-1020 [162 Cal.Rptr. 224], "In administrative mandamus actions brought under section 1094.5 of the Code of Civil Procedure, appellate review is limited to issues in the record at the administrative level. 'It is fundamental that the review of administrative proceedings provided by section 1094.5 of the Code of Civil Procedure is confined to the *issues* appearing in the record of that body as made out by the parties to the proceedings, though additional *evidence*, in a proper case, may be received. [Citation.] It was never contemplated that a party to an administrative hearing should withhold any defense then available to [her] or make only a perfunctory or "skeleton" showing in the hearing and thereafter obtain an unlimited trial de novo, *on expanded issues*, in the reviewing court. [Citation.] The rule compelling a party to present all legitimate issues before the administrative tribunal is required in order to preserve the integrity of the proceedings before that body and to endow them with a dignity beyond that of a mere shadow-play.' " (Third italics added.)

Similarly, in *NBS Imaging Systems, Inc.* v. *State Bd. of Control* (1997) 60 Cal.App.4th 328, 336-337 [70 Cal.Rptr.2d 237], an unsuccessful bidder sought to regain a government contract but "made no timely mention of [a certain state administrative manual provision] in the administrative proceedings. Accordingly, the hearing officer and the board had no opportunity to evaluate the application or import of these tardy assertions and the superior court had no authority to consider them. [Citation.]" (Fn. omitted.) Consequently, the "superior court erred in granting relief based on a legal theory never presented during the administrative proceedings. (. . . ['exhaustion of remedies doctrine applies equally to questions of law and fact'].)" (*Id.*, at p. 337, citations omitted.)

In the instant case, Pegues did not raise the issue of alleged disparate treatment by the Department at the Commission level. Pegues first raised the issue in the administrative mandamus proceeding. However, the Commission subsequently had the opportunity to consider the issue because the trial court directed a limited remand for that purpose. Therefore, the trial court's enlarging of the scope of the issues was harmless.

However, as discussed below, the trial court's ultimate decision with respect to the merits of the issue of disparate treatment was legally erroneous.

### 2. *Trial court abused its discretion in ordering Pegues's reinstatement on the ground she had been subjected to disparate treatment.*

#### a. *Background.*

█ The threshold issue is whether the trial court properly received Pegues's evidence of her alleged disparate treatment, evidence which Pegues had not previously proffered to the Commission. The newly proffered evidence consisted of: (1) the Stewart letter, dated April 28, 1994, which stated that any employee who filed a false application to obtain food stamps *to which he or she was not entitled* would be discharged; and (2) Commission decisions rendered in late 1995 involving four other Department employees.

Code of Civil Procedure section 1094.5, subdivision (e), provides: "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

#### b. *The proffered evidence was incomplete.*

The trial court abused its discretion in receiving the proffered evidence of disparate treatment because the evidence was highly selective and incomplete.

As indicated, 1,410 Department employees applied for emergency food stamps following the Northridge earthquake. Approximately 140 of those employees were discharged or suspended for improperly applying for food stamps, and 85 of the disciplined employees appealed to the Commission. The supplemental evidence consisted of materials from *four* of those administrative proceedings before the Commission.

Further, the proffered evidence from those four cases consisted only of the hearing officers' reports and the final Commission orders. The proffered evidence did not include the transcripts of those proceedings or other materials in the administrative records of those cases which would have shed light on how those cases were similar to or different from the instant case.

#### c. *The four other cases were distinguishable.*

Even the superficial records proffered by Pegues indicate those four cases were substantially different from the instant case.

Each of the three eligibility workers disciplined in those cases had less experience with the Department than did Pegues: Townes had "[o]ver 4 years," Jennings had "3 years" and Lopez had "[t]hree years." The fourth Department employee was a warehouse worker.

Pegues, on the other hand, had 15 years of experience in determining the eligibility of applicants for public assistance.

### d. *Mere disparity in punishment is not grounds for reinstatement.*

Moreover, even if Pegues could show her case and the other four were similar in nature, "[w]hen it comes to a public agency's imposition of punishment, 'there is no requirement that charges similar in nature must result in identical penalties.' [Citations.]" (*Talmo* v. *Civil Service Com.* (1991) 231 Cal.App.3d 210, 230-231 [282 Cal.Rptr. 240].)

Therefore, even assuming the four other employees who were not discharged had engaged in similar misconduct, that would not entitle Pegues to some discipline short of discharge. Accordingly, the trial court abused its discretion in reinstating Pegues on the ground the Department had not discharged other employees who had been charged with misrepresenting their food stamp eligibility.

Having disposed of the trial court's disparate treatment analysis, we now turn to the central issue on appeal as to the propriety of the punishment.

### 3. *Trial court erred in second-guessing Commission's decision that discharge was warranted under the circumstances.*

As noted, the hearing officer, the Commission and the trial court all found Pegues had falsified her household income in her food stamp application. Pegues does not challenge the sufficiency of the evidence to support that finding. Thus, the issue is simply whether discharge was an excessive penalty under these circumstances.

### a. *Standard of review as to the propriety of the penalty.*

"It is well settled that the propriety of a penalty imposed by an administrative agency is a matter resting in the sound discretion of the agency and that its decision will not be disturbed unless there has been an abuse of discretion." (*Szmaciarz* v. *State Personnel Bd.* (1978) 79 Cal.App.3d 904, 921 [145 Cal.Rptr. 396].) In reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such

penalties, " 'neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh.' " (*Ibid.*) However, if the penalty imposed, under all the facts and circumstances, clearly was excessive, this will be deemed an abuse of discretion and the reviewing court is not powerless to act. (*Ibid.*)

If reasonable minds might differ as to the propriety of the penalty imposed, this fact serves to fortify the conclusion the administrative body acted within the area of its discretion. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 594 [43 Cal.Rptr. 633, 400 P.2d 745]; *Szmaciarz* v. *State Personnel Bd., supra,* 79 Cal.App.3d at p. 922.)

> b. *Penalty of discharge was within the Commission's discretion.*

■ Under the criteria stated above, the trial court erred in substituting its own judgment for that of the Commission as to the appropriate penalty.

In considering whether the Commission acted within its discretion in upholding Pegues's discharge, we note "the overriding consideration . . . is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. [Citation.]" (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 218 [124 Cal.Rptr. 14, 539 P.2d 774].)

As the County argues, because integrity and trustworthiness cannot be instilled in an employee, the Department must be allowed to respond swiftly and decisively to violations of the public trust in order to protect the public fisc and preserve the Department's image in the community and among its own ranks. Case law recognizes that "[d]ishonesty is incompatible with the public trust." (*Talmo* v. *Civil Service Com., supra,* 231 Cal.App.3d at p. 231.) Consequently, in view of the uncontroverted evidence of dishonesty, the discipline imposed by the Commission was well within its discretion. Pegues was an eligibility worker dealing with applications for public assistance. Her dishonesty violated the very law which she and her employer are charged with enforcing.

The trial court found that because Pegues did not actually receive the food stamps for which she applied, discharge was an excessive penalty. However, Pegues's nonreceipt of the food stamps does not mitigate her dishonesty.

In granting Pegues's petition, the trial court also found there was no evidence her financial circumstances "made her ineligible for food stamps;

[the Department] failed to carry this burden." However, just as with whether Pegues actually received the food stamps, Pegues's actual eligibility would not negate her dishonest application for benefits.

With regard to the propriety of the discharge, the trial court ruled the Department *had the burden of proving* not only that Pegues made false statements on her application (which was proven), but also that Pegues was actually ineligible for food stamp benefits. In so doing, the trial court improperly inserted ineligibility as an additional element required for discharge. Under PA 285, a dishonest application was sufficient cause for discharge. As indicated, Pegues was a signatory to PA 285, which provided, inter alia: "If you apply for, are now, or become a recipient of any public assistance or services administered by this Department, *you must report immediately, truthfully and fully all information required on public assistance/ services reporting forms. You will be discharged if you provide late, false or incomplete information which is needed to determine your eligibility for public assistance/services.*" (Italics added.) Therefore, Pegues's dishonest application for food stamp benefits was sufficient cause for discharge, without a further showing by the Department that Pegues was actually ineligible for the requested benefits.

In support of her contention the Department was obligated to prove she was ineligible for food stamps, Pegues relies in particular on the Stewart letter, which was issued to employees after the food stamp improprieties came to light. As indicated, the letter states in relevant part: "Findings of any of the following actions by employees will result in discharge: [¶] . . . [¶] Employee falsified application (including information/eligibility criteria) *to obtain County Emergency Food Stamp Program benefits to which s/he was not entitled*; . . ." (Italics added.) Pegues emphasizes she never *obtained* the food stamps for which she applied. Be that as it may, Pegues falsely *applied* for the food stamp benefits.

Moreover, Pegues also was bound by PA 285, which already was in place at the time Pegues applied for food stamps. PA 285 explicitly warned, *"You will be discharged if you provide . . . false . . . information which is needed to determine your eligibility for public assistance/services."* (Italics added.) In addition, section 9120 of the Department's personnel manual advised that progressive discipline did not apply to certain types of misconduct, such as dishonesty. Further, section 9700 thereof provided for discharge, on the first offense, for "[f]ailing to properly meet reporting responsibilities as a recipient of aid or services administered by the department."

Thus, Pegues had clear notice that a dishonest application for public assistance was grounds for immediate discharge. To uphold the discharge,

the Department was not required to prove, as an additional element, that Pegues was not entitled to the benefits for which she dishonestly had applied.[3]

In sum, the trial court erred in second-guessing the Commission's determination that Pegues's dishonest application for food stamp benefits was sufficient cause for discharge.

### DISPOSITION

The judgment is reversed with directions to deny Pegues's petition. Each party to bear respective costs on appeal.

Aldrich, J., and Goodman, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied November 24, 1998.

---

[3]With respect to the issue of Pegues's actual eligibility for food stamps, the record reflects that when the trial court remanded the matter to the Commission to examine the issue of disparate punishment, the Commission in turn remanded the case to the hearing officer with the following query: "Would the appellant have been eligible for the emergency food stamps had the correct information been provided on the application form?" At that juncture, Pegues's counsel objected on the ground the scope of the remand was limited to the issue of disparate treatment, and that the Commission was precluded from reopening the record to enable the Department to establish a basis for discharge which it did not pursue originally. As a result of Pegues's objection, the Commission's decision on remand was limited to Pegues's claim of disparate treatment, which the Commission rejected.

*Judge of the Municipal Court for the Culver Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.