BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE MIKE KANALAKIS, SHERIFF OF THE COUNTY OF MONTEREY, has requested an opinion on the following questions:
1. Does the privilege for confidential marital communications apply when a married peace officer is being interrogated during a law enforcement agency's internal affairs investigation of alleged police misconduct involving the peace officer's spouse?
2. If a married peace officer asserts the privilege for confidential marital communications during an internal affairs interrogation and refuses a direct order to answer the investigator's questions, may the law enforcement agency take disciplinary action against the officer?
3. If a peace officer has disclosed marital communications during an internal affairs investigation in order to avoid disciplinary action, and use of the marital communications in the investigation results in disciplinary action being taken against the peace officer's spouse, who thereafter challenges the agency's action in an administrative or court proceeding wherein the peace officer witness refuses to testify against the spouse, may the law enforcement agency introduce the previously disclosed marital communications to support its disciplinary action in the subsequent proceeding?
 CONCLUSIONS
1. The privilege for confidential marital communications does not apply when a married peace officer is being interrogated during a law enforcement agency's internal affairs investigation of alleged police misconduct by the peace officer's spouse.
2. If a married peace officer asserts the privilege for confidential marital communications during an internal affairs interrogation and refuses a direct order to answer the investigator's questions, the law enforcement agency may take disciplinary action against the officer after informing him or her that a failure to answer may result in punitive action.
3. If a peace officer has disclosed confidential marital communications during an internal affairs investigation in order to avoid disciplinary action, and use of the marital communications in the investigation results in disciplinary action against the peace officer's spouse, who thereafter challenges the agency's action in an administrative or court proceeding wherein the peace officer witness asserts the privilege not to testify against the spouse, the law enforcement agency may introduce the previously disclosed marital communications to support its disciplinary action in the subsequent proceeding.
 ANALYSIS
The Legislature has enacted a comprehensive statutory scheme, the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, §§ 3300-3313; "Act"), which governs law enforcement agencies conducting internal affairs investigations of peace officers. Such investigations of alleged police misconduct are instrumental in maintaining public safety and promoting public confidence in the effectiveness and integrity of those charged with enforcing the law. (See Pen. Code, § 832.5; Pasadena PoliceOfficers Assn. v. City of Pasadena (1990) 51 Cal.3d 564, 568,571-572; Gilbert v. City of Sunnyvale (2005)130 Cal.App.4th 1264, 1286; Upland Police Officers Assn. v. City of Upland
(2003) 111 Cal.App.4th 1294, 1302; Christal v. Police Commissionof City and County of San Francisco (1939) 33 Cal.App.2d 564,567; 79 Ops.Cal.Atty.Gen. 163, 164 (1996).)
The three questions to be resolved concern a law enforcement agency's internal affairs investigation of alleged misconduct by a married peace officer whose spouse is also a peace officer with the agency. The interrogation of the one spouse with respect to the other's activities might lead to the other's "dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (Gov. Code, § 3303.)
Before addressing each question in turn, we note that it is a fundamental principle of our justice system that persons having firsthand information concerning matters in dispute must testify, when called upon, about their observations and knowledge. (See, e.g., 8 Wigmore, Evidence (McNaughton ed. 1961) § 2192, pp. 70-73.) Evidence Code section 911[1] states:
 "Except as otherwise provided by statute:
 "(a) No person has a privilege to refuse to be a witness.
 "(b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing.
 "(c) No person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any writing, object, or other thing."
However, as indicated in section 911, certain privileges allowing the withholding of relevant evidence are "otherwise provided by statute." Here, we address two distinct "marital privileges." The first is set forth in section 980:
 "Subject to Section 912 and except as otherwise provided in this article, a spouse (or his guardian or conservator when he has a guardian or conservator), whether or not a party, has a privilege during the marital relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he claims the privilege and the communication was made in confidence between him and the other spouse while they were husband and wife."[2]
The second and broader privilege is set forth in sections 970 and 971. Section 970 provides: "Except as otherwise provided by statute, a married person has a privilege not to testify against his spouse in any proceeding." Section 971 additionally states:
 "Except as otherwise provided by statute, a married person whose spouse is a party to a proceeding has a privilege not to be called as a witness by an adverse party to that proceeding without the prior express consent of the spouse having the privilege under this section unless the party calling the spouse does so in good faith without knowledge of the marital relationship."
These marital privileges are entirely separate and distinct (People v. Catlin (2001) 26 Cal.4th 81, 130; People v. Dorsey
(1975) 46 Cal.App.3d 706, 716-717), but the purpose of each is the same — to promote respect for privacy and harmony within marital relationships. (See People v. Sinohui (2002)28 Cal.4th 205, 211; 18 Ops.Cal.Atty.Gen. 231, 233 (1951)).
1. Scope of the Privilege for Confidential Marital Communications
We are first asked whether the marital communications privilege of section 980 is available to a married peace officer who is being questioned by a law enforcement agency during an internal affairs investigation regarding the conduct of the officer's spouse. We conclude that the privilege is unavailable.
On its face, section 980 imposes few restrictions on the use of this privilege. Assuming no waiver (see § 912), the privilege applies to all communications made "in confidence" between the spouses "while they were husband and wife"; it may be asserted as to such communications even after the marriage has terminated, and whether or not the spouse is a party to the proceeding. (SeePeople v. Dorsey, supra, 43 Cal.App.3d at p. 717.) While the Legislature has provided several specific exceptions to this marital communications privilege (§§ 981-987), they are inapplicable here.
However, this privilege applies only in "proceedings" as defined by statute. Section 910 states:
 "Except as otherwise provided by statute, the provisions of [sections 900-1070] apply in all proceedings. The provisions of any statute making rules of evidence inapplicable in particular proceedings, or limiting the applicability of rules of evidence in particular proceedings, do not make this division inapplicable to such proceedings."
Section 901 defines "proceedings" as follows:
 "`Proceeding' means any action, hearing, investigation, inquest, or inquiry (whether conducted by a court, administrative agency, hearing officer, arbitrator, legislative body, or any other person authorized by law) in which, pursuant to law, testimony can be compelled to be given." Does an internal affairs investigation conducted by a law enforcement agency constitute an investigation in which "testimony can be compelled to be given"?
First, there is no suggestion in the Act that internal affairs investigations are subject to or governed by the Evidence Code. More importantly, no provision of law, in the Act or elsewhere, authorizes internal affairs investigators to compel the testimony of witnesses through issuance of subpoenas. While a peace officer's "failure to answer questions directly related to the investigation or interrogation may result in punitive action" (Gov. Code, § 3303, subd. (e)), his or her testimony cannot be "compelled to be given" within the meaning of section 901. The power to compel a witness's testimony emanates from the subpoena power. Refusal to testify may be punished as contempt, whether the penalty is imposed directly, as when a court conducts the proceeding (see, e.g., Code Civ. Proc., § 1991; Pen. Code, §1331), or indirectly, as when an official or an administrative or legislative body may obtain court enforcement of its subpoenas (see, e.g., Gov. Code, § 9408; Bus. Prof. Code, § 6051). Without the power to subpoena, testimony cannot be "compelled to be given" for purposes of section 901.
The California Law Revision Commission made this clear when it summarized the scope of the Evidence Code privileges in a 1964 report to the Governor and the Legislature:
 "From the foregoing discussion, . . . it is apparent that the duty to testify in response to a subpoena
can arise in a variety of ways and in numerous types of proceedings and forums. It ranges from the courtroom situation in a civil or criminal case conducted by a court, through pretrial and special proceedings incident to the judicial process, through the full range of legislative action by state and local governments, through a maze of administrative agencies, boards, commissions, and the like, to the local tax assessors and beyond. In every situation in which there arises a duty to testify, there arises an equivalent potential claim of privilege." (Recommendation Relating to Uniform Rules of Evidence (Sept. 1964) 6 Cal. Law Revision Com. Rep. (1964) p. 320; italics added.)
We find that the "proceedings" in which the privilege for confidential marital communications "applies" are co-extensive with those proceedings — whether adjudicatory, legislative, or investigative in nature — in which the subpoena power is available to compel testimony. This finding is consistent with the function of the privilege in practice: it operates chiefly to immunize witnesses from the sanction of contempt when they refuse to disclose marital communications. Because a law enforcement agency acts without subpoena power when it conducts an internal affairs investigation, that fact-finding process is not a proceeding "in which . . . testimony can be compelled to be given" under section 901.
We conclude that the privilege for confidential marital communications does not apply when a married peace officer is being interrogated during a law enforcement agency's internal affairs investigation of alleged police misconduct involving the peace officer's spouse.
2. Refusal to Disclose Marital Communications
The second question concerns whether disciplinary action may be taken against a married peace officer who refuses to answer questions, claiming the marital communications privilege, in an internal affairs investigation. We conclude that disciplinary action may be taken against the officer after informing him or her that a failure to answer may result in the agency taking punitive action.
In Pasadena Police Officers Assn. v. City of Pasadena, supra,51 Cal.3d 564, the court observed with respect to a peace officer's claimed privilege against self-incrimination in an internal affairs investigation:
 ". . . [If] no criminal charges are contemplated, a peace officer under administrative interrogation must respond to questioning. [Citations.] Thus, an officer under administrative investigation does not have `the right to remain silent free of all sanctions.' [Citation.] As we observed in Lybarger [v. City of Los Angeles 40 Cal.3d 822], supra, at page 827, a peace officer has no absolute right under the Constitution to refuse to answer potentially incriminating questions asked by his or her employer; instead, the officer employee's right against self-incrimination is deemed adequately protected by precluding any use of his or her statements at a subsequent criminal proceeding should such charges be filed." (Id. at p. 578; see also 79 Ops.Cal.Atty.Gen. 185, 195, fn 7 (1996).)
The right to avoid self-incrimination is a privilege of constitutional dimension (U.S. Const., 5th 14th Amend.; Cal. Const., art. I, §§ 15, 24), while the marital privileges presented here are only statutory grants that must be narrowly construed (§§ 970, 971, 980; see, e.g., People v. Sinohui,supra, 28 Cal.4th at pp. 211-212; Wells Fargo Bank v. SuperiorCourt (2000) 22 Cal.4th 201, 206). Given that a peace officer who refuses to answer questions in a grand jury investigation may be disciplined even when the refusal is based upon the constitutional privilege against self-incrimination (see, e.g.,Szmaciarz v. California State Personnel Bd. (1978)79 Cal.App.3d 904, 915-916; Christal v. Police Commission of Cityand County of San Francisco, supra,33 Cal.App.2d at pp. 567-568), it follows that any invocation of the statutory marital communications privilege in an internal affairs investigation may also be subject to discipline. In this situation, Government Code section 3303, subdivision (e), requires only that a public safety officer facing interrogation ". . . shall be informed that failure to answer questions directly related to the investigation or interrogation may result in punitive action."
We conclude that if a married peace officer asserts the privilege for confidential marital communications during an internal affairs interrogation and refuses a direct order to answer the investigator's questions, the law enforcement agency may take disciplinary action against the officer after informing him or her that a failure to answer may result in punitive action.
3. Use of Disclosed Marital Communications in Subsequent Proceeding
The final question concerns a married peace officer's disclosure of marital communications during an internal affairs investigation after being informed that a failure to answer may result in punitive action. Thereafter, disciplinary action is taken against the peace officer's spouse, but the spouse challenges the agency's action in an administrative or court proceeding during which the peace officer witness refuses to testify pursuant to the terms of section 970. May the law enforcement agency introduce the previously disclosed marital communications in this subsequent appellate proceeding to support its challenged disciplinary action? We conclude that it may.
Here, the subsequent proceeding is a continuation of the internal affairs investigation and the disciplinary action taken by the law enforcement agency; it involves the same parties. This proceeding is to be distinguished from a criminal prosecution or a separate civil action that does not involve a challenge to the disciplinary action taken by the agency. As such, the proceeding, directly resulting from an appeal by the disciplined peace officer, represents merely a phase or stage of the same overall administrative inquiry into the circumstances of the alleged misconduct and the propriety of the agency's disciplinary action taken in response thereto. (See Gov. Code, §§ 3304, subd. (b), 3304.5; Pasadena Police Officers Assn. v. City of Pasadena,supra, 51 Cal.3d at p. 578; Gordon v. Horsley (2001)86 Cal.4th 336, 340-343, 347-350; Runyan v. Ellis (1995)40 Cal.App.4th 961, 964-967.)
In this context, then, any reviewing body, whether an administrative tribunal or a court, would plainly be unable to fairly evaluate the justifications for or the appropriateness of the law enforcement agency's disciplinary action if it were precluded, through a witness's assertion of a privilege, from considering statements or other evidence that the agency's investigators properly acquired during the internal affairs investigation and that the agency was entitled to, and did, consider in imposing the disciplinary action. (See People v.Gwillim, (1990) 223 Cal.App.3d 1254, 1269 [officer's statement made during internal affairs investigation "is protected within the context of criminal proceedings, but not within the context of administrative proceedings"].)
A law enforcement agency must be able to effectively discipline peace officers for misconduct. (Pasadena Police Officers Assn.v. City of Pasadena, supra, 51 Cal.3d at p. 578; Gilbert v.City of Sunnyvale, supra, 130 Cal.App.4th at p. 1279 [government has strong interest in terminating law enforcement officers of questionable moral character quickly, efficiently, and without burdensome cost]; Szmaciarz v. California State Personnel Bd.,supra, 79 Cal.App.3d at pp. 917-918.) As we noted in79 Ops.Cal.Atty.Gen. 163, supra:
 ". . . The Legislature contemplated that when police misconduct was discovered in such investigations [of citizens' complaints], appropriate disciplinary action would be taken; the purpose of the statute is to have the agency `investigate and remedy
wrongdoing.'" (Id. at p. 164, italics added.)
If the goals of the Act are to be effectuated, the previously disclosed marital communications must be available in any subsequent, related proceedings in which the law enforcement agency defends its disciplinary action. (See People v. Coronado
(1995) 12 Cal.4th 145, 151; California Correctional PeaceOfficers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133,1147.)
We conclude that if a peace officer has disclosed marital communications during an internal affairs investigation in order to avoid disciplinary action, and use of the marital communications in the investigation results in disciplinary action being taken against the peace officer's spouse, who thereafter challenges the agency's action in an administrative or court proceeding wherein the peace officer witness refuses to testify against the spouse, the law enforcement agency may introduce the previously disclosed marital communications to support its disciplinary action in the subsequent proceeding.
[1] All further references to the Evidence Code are by section number only.
[2] Section 912 refers to the waiver of various privileges.